OFFICE EMPLOYES INTERNATIONAL UNION, LOCAL NO. 11, AFL–CIO, *v.* NATIONAL LABOR RELATIONS BOARD.

No. 422. Argued March 28, 1957.—Decided May 6, 1957.

*Joseph E. Finley* argued the cause and filed a brief for petitioner.

*Dominick L. Manoli* argued the cause for respondent. With him on the brief were *Solicitor General Rankin, Stephen Leonard* and *Fannie M. Boyls.*

*Samuel B. Bassett* and *Clifford D. O'Brien* filed a brief for the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, AFL–CIO, et al., as *amici curiae,* urging affirmance.

MR. JUSTICE CLARK delivered the opinion of the Court.

This case concerns the attempt of the petitioner, Local 11 of the Office Employes International Union, AFL–CIO, to represent for collective bargaining purposes the office-clerical workers employed at the Teamsters

Building in Portland, Oregon. These office-clerical employees were engaged by the various local unions and affiliates of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, AFL. Local 11 filed a series of unfair labor practice complaints with respondent, National Labor Relations Board, charging in substance that the Teamster group [1] had interfered with the Local's effort to organize the office-clerical workers in violation of § 8 (a) of the National Labor Relations Act. [2] The primary question is whether with respect to their own employees labor organizations are "employers" within the meaning of § 2 (2) of the Act. [3] Since we decide this question in the affirmative a subsidiary question is posed: Whether the Board may, by the application of general standards of classification, refuse to assert any jurisdiction over

---

[1] The complaints were leveled at the International Brotherhood of Teamsters and its representative, Teamster Local No. 206, Teamster Local No. 223, the Teamsters' Joint Council of Drivers No. 37, the Oregon Teamsters' Security Plan Office and its administrator, and the Teamsters Building Association, Inc. The latter owns and operates an office building in Portland, Oregon. The office-clerical employees petitioner attempted to organize perform services for the various teamster organizations here involved. These organizations are the exclusive tenants of the building.

[2] 61 Stat. 140, 29 U. S. C. § 158 (a).

[3] 61 Stat. 137, 29 U. S. C. §152 (2), provides in pertinent part: "Sec. 2. When used in this Act—

.        .        .        .        .

"(2) *The term 'employer'* includes any person acting as an agent of an employer, directly or indirectly, but *shall not include* the United States or any wholly owned Government corporation, or any Federal Reserve Bank, or any State or political subdivision thereof, or any corporation or association operating a hospital, if no part of the net earnings inures to the benefit of any private shareholder or individual, or any person subject to the Railway Labor Act, as amended from time to time, or *any labor organization (other than when acting as an employer)*, or anyone acting in the capacity of officer or agent of such labor organization." (Emphasis supplied.)

labor unions as a class when they act as employers. The Board here refused to assert any jurisdiction, and the complaints were dismissed. 113 N. L. R. B. 987. The Court of Appeals affirmed, 98 U. S. App. D. C. 335, 235 F. 2d 832. The importance of the jurisdictional questions involved caused us to grant certiorari in the interest of the proper administration of the Act. 352 U. S. 906. We believe the Board erred when it refused to take jurisdiction and thus, in effect, engrafted a blanket exemption upon the Act for all labor unions as employers.

We shall not deal with the merits of the unfair labor practice complaints. As to the jurisdictional question, the findings indicate that there are 23 workers employed by the various Teamster organizations at the Teamsters Building. They are paid by the Teamster group which, excluding the Security Plan Office, forms "an integral part of a multistate enterprise." [4] The trial examiner

---

[4] The annual payment of initiation fees and taxes from members of the Teamsters Union throughout the country to the International's headquarters in Washington, D. C., amounts to more than $6,000,000. The minimum monetary jurisdictional requirement for a multistate enterprise such as the Teamsters, promulgated by the Board in *Jonesboro Grain Drying Corp.*, 110 N. L. R. B. 481 (1954), is $250,000.

The Security Plan Office administers 18 trust funds and receives contributions provided for by collective bargaining agreements with some 2,000 employers located in four western States. Some of the funds are invested in health and welfare insurance policies on which over $2,000,000 per annum in premiums is paid to a California insurance carrier. The minimum "direct outflow" requirement established for jurisdictional purposes in *Jonesboro, supra*, is $50,000. The California insurance carrier remits 4% of the premiums to the Security Plan Office to defray the expense of maintaining an office and processing and paying claims under the health and welfare plan. The Security Plan Office employed and paid at various times from five to ten of the personnel at the Teamsters Building.

The Teamsters Building Association, Inc., is, as are the other Teamsters, a nonprofit corporation. Its stock is held by six Teamster

concluded that the Teamster group came within the term "employer" under § 2 (2) of the Act. He further found that their operation was well within the monetary jurisdictional standards set by the Board in *Jonesboro Grain Drying Cooperative,* 110 N. L. R. B. 481 (1954). While the Board agreed with the examiner's interpretation of § 2 (2) as to the term "employer," it held, by a divided vote,[5] that since the Teamster group was composed of unions, all engaged in a nonprofit business, the criteria applied to other nonprofit employers should govern. It further concluded "that labor organizations, which, when engaged in their primary function of advancing employee welfare, are institutions unto themselves within the framework of this country's economic scheme," should not "be made subject to any of the standards originated for business organizations." 113 N. L. R. B., at 991.

## I.

With regard to the jurisdiction of the Board the wording of § 2 (2) of the Act is clear and unambiguous. It says that the term "employer" includes any labor organization "when acting as an employer." It follows that when a labor union takes on the role of an employer the Act applies to its operations just as it would to any other employer. The Board itself recognized this fact as early

locals including Local 206, one of the defendants charged with unfair labor practices in the complaint before the Board. The Association's sole function is the ownership and maintenance of the office building in Portland which is occupied by the various Teamster organizations.

[5] We treat the opinion of the Board, as did the Court of Appeals, as being that of members Farmer and Peterson. While Mr. Murdock's concurrence was on the "more limited grounds" that Congress never intended labor unions to be employers with respect to their own employees when engaged in union activities, he concurred in the dismissal by Messrs. Farmer and Peterson. The other two members dissented.

as 1951 in *Air Line Pilots Association,* 97 N. L. R. B. 929. There the Air Line Pilots Association was found to be an employer and the Board ordered that an election be held to determine the wishes of that union's own employees in regard to the selection of appropriate employee bargaining units and a collective bargaining representative. Section 9 of the Act [6] was therefore applied to the union as an employer.

The legislative history of § 2 (2) unequivocally supports our conclusion. The Act, before its adoption in 1935, was considered by both the 73d and 74th Congresses. [7] On each occasion the bill went into committee with labor unions excluded from the definition of an employer. [8] Twice the Senate Committee to which it was referred amended it to include within the category of an employer labor unions when dealing with their own employees. The Committee inserted the words "other than when acting as an employer" after the exclusion of labor organizations from the definition of an employer. The Senate Committee on Education and Labor to which the bill was referred stated in explanation of this alteration:

> "The reason for stating that 'employer' excludes *'any labor organization, other than when acting as an employer'* is this: In one sense every labor organization is an employer, it hires clerks, secretaries, and the like. In its relations with its own employees, a labor organization ought to be treated as an employer, and the bill so provides." (Emphasis added.) S. Rep. No. 1184, 73d Cong., 2d Sess. 4.

---

[6] 61 Stat. 143, 29 U. S. C. § 159.

[7] S. 2926, 73d Cong., 2d Sess.; S. 1958, 74th Cong., 1st Sess.

[8] "(2) The term 'employer' . . . shall not include . . . any labor organization . . . ." S. 2926, 73d Cong., 2d Sess. 3. This bill, while receiving committee approval as altered, was not enacted. When Senator Wagner resubmitted the bill the next year he did so in its original form.

The bill which became the Act in 1935, S. 1958, 74th Cong., 1st Sess., contained the identical language set forth in italics in the above Senate Report. It is inescapable that the Board has jurisdiction.

## II.

The question remains whether the Board may, nevertheless, refuse to assert jurisdiction over labor unions, as a class, when acting as employers. The Board in the face of the clear expression of the Congress to the contrary has exempted labor unions when acting as employers from the provisions of the Act. We believe that such an arbitrary blanket exclusion of union employers as a class is beyond the power of the Board. While it is true that "the Board sometimes properly declines to [assert jurisdiction] stating that the policies of the Act would not be effectuated by its assertion of jurisdiction *in that case*" (emphasis supplied), *Labor Board* v. *Denver Bldg. Council*, 341 U. S. 675, 684 (1951), here the Board renounces jurisdiction over an entire category of employers, *i. e.*, labor unions, a most important segment of American industrial life. It reasons that labor unions are nonprofit organizations. But until this case the Board has never recognized such a blanket rule of exclusion over all nonprofit employers. It has declined jurisdiction on an *ad hoc* basis over religious, educational, and eleemosynary employers such as a university library, a symphony orchestra, a research laboratory, and a church radio station.[9] When the Act was amended in 1947 the Congress was aware of the Board's general practice of

---

[9] *Trustees of Columbia University,* 97 N. L. R. B. 424 (1951) (library); *Philadelphia Orchestra Association,* 97 N. L. R. B. 548 (1951) (orchestra); *Armour Research Foundation,* 107 N. L. R. B. 1052 (1954) (laboratory); and *Lutheran Church, Missouri Synod,* 109 N. L. R. B. 859 (1954) (radio station).

excluding nonprofit organizations from the coverage of the Act when these organizations were engaged in non-commercial activities.[10] The House of Representatives attempted to give these exclusions specific legislative approval.[11] However, the Senate draft of the bill excluded only hospital employers from the Act's coverage. The Senate version became a part of the Act and the language is the same as that involved here. The joint committee report on which the final enactment was based recited that the activities of nonprofit employers or their employees had been considered as coming within the Act only "in exceptional circumstances and in connection with purely commercial activities."[12] To place labor unions in this category is entirely unrealistic for the very nature of the excluded nonprofit employers is inherently different from that of labor unions and the reason for such exclusion has no applicability to union activity such as that found here. This is particularly true when we consider the pointed language of the Congress—repeated in Taft-Hartley in 1947—that unions shall not be excluded when acting as employers. As the dissenting judge in the Court of Appeals points out, "§ 2 (2)'s strikingly particular reference to labor unions sharply differentiates them from non-profit organizations generally . . . ." 98 U. S. App. D. C., at 337, 235 F. 2d, at 834. We do not, therefore, believe that it was within the Board's discretion to remove unions as employers from the coverage of the Act after Congress had specifically included them therein.

---

[10] H. R. Rep. No. 510, 80th Cong., 1st Sess. 32.

[11] H. R. 3020, 80th Cong., 1st Sess. 4. The exclusions would have included "any corporation, community chest, fund, or foundation organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes, or for the prevention of cruelty to children or animals."

[12] See note 10, *supra*.

It is true that the dollar volume jurisdictional standards adopted by the Board to govern its jurisdiction, *Hollow Tree Lumber Co.*, 91 N. L. R. B. 635 (1950), exclude small employers whose business does not sufficiently affect commerce.[13] But its exercise of discretion in the local field does not give the Board the power to decline jurisdiction over all employers in other fields. To do so would but grant to the Board the congressional power of repeal. See also *Guss* v. *Utah Labor Relations Board,* 353 U. S. 1, 4 (1957), where the Court refused to pass "upon the validity of any particular declination of jurisdiction by the Board or any set of jurisdictional standards."

We therefore conclude that the Board's declination of jurisdiction was contrary to the intent of Congress, was arbitrary, and was beyond its power. The judgment is therefore reversed and the case is remanded to the Court of Appeals for remand to the Board for further proceedings in accordance with this opinion.

*It is so ordered.*

---

[13] See also *Hotel Association of St. Louis,* 92 N. L. R. B. 1388 (1951), where the Board declined jurisdiction over hotel employers. The Board's refusal was based on the local character of the hotel business. The District Court for the District of Columbia has held that such refusal is not arbitrary in *Hotel Employees Local No. 255* v. *Leedom,* 147 F. Supp. 306 (1957).

In *Checker Cab Co.,* 110 N. L. R. B. 683 (1954), the Board declined jurisdiction of an action involving a purely local employer operating two taxicab companies in Baton Rouge, Louisiana. See also *Yellow Cab Company of California,* 90 N. L. R. B. 1884 (1950); *Skyview Transportation Co.,* 90 N. L. R. B. 1895 (1950); and *Brooklyn Cab Corp.,* 90 N. L. R. B. 1898 (1950). In these cases the declination of jurisdiction was based on the local character of the operations. We indicate neither approval nor disapproval of these jurisdictional declinations.

MR. JUSTICE BRENNAN, with whom MR. JUSTICE FRANKFURTER, MR. JUSTICE BURTON and MR. JUSTICE HARLAN join, concurring in part and dissenting in part.

I agree that labor organizations are "employers" under § 2 (2) of the Act with respect to their own employees. I dissent, however, from the Court's holding that the Board is without power to decline to assert jurisdiction over labor unions as a class. I am of the view that the Board has discretionary authority to decline to do so when the Board determines, for proper reasons, that the policies of the Act would not be effectuated by its assertion of jurisdiction. Cf. *Labor Board* v. *Denver Bldg. Council*, 341 U. S. 675, 684; *Hotel Association of St. Louis*, 92 N. L. R. B. 1388, aff'd, 147 F. Supp. 306; *Checker Cab Co.*, 110 N. L. R. B. 683. However, the declination to assert jurisdiction was rested upon the same grounds relied upon by the Board in declining jurisdiction over nonprofit organizations. These grounds, in my view, are not proper reasons for declining to assert jurisdiction over labor organizations. I would, therefore, remand the case to the Court of Appeals for remand to the Board for reconsideration.