Francisco Medina Vega, Plaintiff and Appellant, *v.* Unión Obreros Cervecería Corona, etc., Defendant and Appellee.

No. R-62–128. Decided November 30, 1962.

*Alberto Picó, Francisco A. Rosa Silva* and *Rieckehoff & Vargas* for appellant. *Martín Avilés Bracero* for appellee.

Division composed of Mr. Chief Justice Negrón Fernández, Mr. Justice Blanco Lugo, and Mr. Justice Ramírez Bages.

MR. JUSTICE BLANCO LUGO delivered the opinion of the Court.

This case involves the novel question of the correctness of a wage claim against a labor union for extra hours worked for it by its president. Does an employer-employee relationship exist between the union and its president permitting the application of the provisions of the Act governing working hours in Puerto Rico, Act No. 379, of May 15, 1948, 29 L.P.R.A. § 271 *et seq.*? In the affirmative, would the plaintiff be excluded as an executive officer or administrator? To a great extent, the answer to the questions posed depends on the specific facts of each case.

Appellant, Francisco Medina Vega, held the post of President of the "Unión de Trabajadores de la Industria Cervecera y Bebidas Refrescantes y Ramas Anexas de Puerto Rico", affiliated to the "Unidad General de Trabajadores de Puerto Rico (UGT)"[1] from August 29, 1953 to November

---

[1] In July 1959, a disaffiliation took place and the defendant union was known as "Obreros Unidos de la Cervecería Corona, Coca Cola, Canada Dry y Ramas Anexas de Puerto Rico, Independiente", and was identified with the initials O.U.I. At present it is affiliated to the U.B.W., AFL-CIO.

8, 1959, that is, for an approximate period of six years and three months. From the conclusions of fact of the trial court it is deduced that in the performance of the duties of his post, the plaintiff occasionally worked in excess of eight hours a day.[2]

In addition to the usual duties flowing from the presidency of any organization—representing the Union, complying and enforcing compliance with the agreements and resolutions of the annual meetings and of the board of directors, as well as the by-laws of internal government; presiding at the meetings of the Union and the Board of Directors; rendering reports of the steps taken by him; appointing committees and signing official documents, as well as checks and orders of payment—he was required by regulation to offer his services exclusively to the Union, and to that effect, he was required to visit daily all the factories in the metropolitan area with which there were collective bargaining agreements, and periodically, annex branches or locals.[3]

As compensation for his services he was assigned "the same salary received by the workers of his trade in the Industry, but that salary shall not exceed thirty-five dollars ($35.00) a week [and] the Union shall further pay to the President all benefits acquired by the Union for his members through collective bargaining agreements, such as vacations with pay, Christmas bonus, medical and hospitalization plan and Social Security" (1952 and 1954 by-laws); "the salary received by a skilled worker of the Corona for 48 hours a week" and the fringe benefits referred to (1956 by-laws); "a salary of a skilled worker in the department where he

---

[2] That occurred during regular or extraordinary meetings of the members of the union, meetings of the Board of Directors of the organization and meetings of the Grievance Committee and while visiting the locals in different towns of the Island.

[3] Articles 39 and 40 of the By-laws of June 21, 1952; Article 35 of the By-laws of December 19, 1954; Article 34 of the By-laws of December 1956; Article 25 of the By-laws of July 12, 1959.

worked for the Companies"; and transportation expenses and the fringe benefits indicated (1959 by-laws). It should be observed that the Union paid to plaintiff a wage that corresponded to the rates mentioned in the collective agreement. The regular working period was paid to him at the rates per hour indicated below:

| | |
|---|---|
| August 29, 1953 to December 31, 1953.... | $0. 625 |
| January 1, 1954 to December 17, 1954.... | 0. 725 |
| December 18, 1954 to March 22, 1957.... | 0. 935 |
| September 7, 1957 to December 27, 1957.. | 1. 15 |
| January 3, 1958 to February 27, 1958.... | 1. 15 |
| March 7, 1958 to November 8, 1959...... | 1. 20 |

■ The trial court concluded that the plaintiff, as an official of the defendant Union, is not the worker, employee or laborer referred to in the Act regulating working hours and, consequently, it dismissed the complaint. To this effect, it made reference to the definition of worker or employee included in § 1a of Act No. 10 of November 14, 1917, as added by Act No. 12 of July 2, 1923, 32 L.P.R.A. § 3102,[4] and § 16 of Act No. 379, *supra*, 29 L.P.R.A. § 285,[5] which lists the occupations subject to said Act.

---

[4] "The word 'worker' as used in this Act shall comprise all manual laborers of either sex and such natural persons as may be employed in domestic services or occupations of both sexes, and the word 'employee' shall comprise all kinds of artisans, employees or clerks of business or industry, in the general acceptation of these last two words."

This section was superseded by § 2 of Act No. 2 of October 17, 1961, 32 L.P.R.A. § 3119 (Supp. 1961), p. 49 which follows substantially the previous wording, but which significantly in referring to the word "employee" indicates that "it is used in its fullest meaning."

[5] "Section 16. The provisions of this Act shall govern in every commercial, industrial, and agricultural establishment; in every shop, factory, central, mill, and manufactory; in every ranch, property, farm, estate, and plantation; in every public service enterprise; in every gainful business, including printeries, publishing houses, newspaper enterprises, clinics, hospitals, pharmacies, teaching institutions, boarding houses, hotels, eating houses, restaurants, stores, groceries, warehouses, depots, markets, garages, bakeries, theatres, race tracks, casinos, and other similar businesses; in every business office or establishment, law office, consulting room and

■ In order to determine the question posed by this writ the definition of worker or employee contained in Act No. 10 of 1917 is irrelevant, for the same refers to the special procedure to institute claims, and does not cover any substantive aspect of the claim for extra hours of work. Regarding Act No. 379, we must consider that it defines an employee as ". . . every person employed for wages, salary, day wages, or any other form of compensation in any occupation. . .", that occupation includes ". . . every *service*, work, labor, help, or toil that an employee performs for his employer"; that employer includes "every natural or artificial person" and that it is emphasized that "the provisions of this Act shall govern. . . in every place devoted to the *rendering of service of any kind through payment.*" Sections 16 and 19 of Act No. 379 of May 15, 1948, 29 L.P.R.A. §§ 285 and 288. From the foregoing it is deduced that under certain circumstances, a labor organization can be considered as an employer for the purposes of the application of the law regarding working hours and days.

The case of *Williams* v. *United Mine Workers of America*, 172 S.W.2d 202 (Ky. 1943) involving the application of the Federal Fair Labor Standards Act,[6] held that the congressional intention was not to exclude labor organizations from the provisions of the law when the union *acted as employer*.

---

professional office, and in every place devoted to the rendering of services of any kind through payment.

"The provisions of this Act shall also be applied to all chauffeurs and drivers of public and private motor vehicles, except those who work on a commission basis.

"The provisions of this Act shall not be applied to persons employed in domestic service; *Provided, however,* that they shall be entitled to one day of rest for every six days of work.

"The provisions of this Act shall not apply to the employees of the Commonwealth Government, of the municipal governments, of the Government of the Capital, or of the agencies or instrumentalities of said Governments, excepting such agencies, and instrumentalities as are devoted to agricultural, industrial, commercial or public service enterprises."

[6] Section 3(d) of the Federal Fair Labor and Standards Act, 29 U.S.C. § 203(d) defines employer as "including any person acting directly

It emphasized that in spite of the basic purpose of mutual benefit which moves the organization of unions and the absence of any intention of profit, the use of employees was conceived as necessary and appropriate in order to achieve the goals for which they are established and to protect the interests of its members. Therefore, when a union employed a person for a daily wage, to check the weight of charcoal extracted by the members of the Union, in order to credit the correct amount to each miner, the relation of employer and employee was created.[7]

█ Even for the purposes of collective bargaining it has been held that a Union can be considered as an employer. *Office Employees I. U.* v. *N.L.R.B.*, 353 U.S. 313 (1957); *Air Line Pilots Ass'n*, 97 N.L.R.B. 929 (1951); see *N.L.R.B. cannot refuse jurisdiction over labor union acting as employer*, 57 Col. L. Rev. 1029 (1957).

█ Having established the basic fact that a union is covered by the provisions of Act No. 379 *when it acts as an employer*, let us examine carefully the facts of this case to determine whether the relation of employer and employee was created between the parties. We readily agree that if plaintiff's duties had been limited to those normally and ordinarily performed by the president of an organization—hereinbefore referred to—the very nature of the duties would exclude the relation above-mentioned. See, *The Unpaid Local Leader*, 3 Lab. L. J. 685 (1952). Nevertheless, under the label of "president" he was assigned duties which properly belong to an ordinary employee, such as visiting daily the enterprises in the metropolitan area with which the

---

or indirectly in the interest of an employer in relation to an employee but shall not include the United States or any state or political subdivision of a state, or any labor organization (*other than when acting as an employer*), or anyone acting in the capacity of officer or agent of such labor organization."

[7] The case of Williams is the object of a commentary in 92 U. of Pa. L. Rev. 327 (1944), but it is not related with the question at bar.

Union had relations, with the obvious purpose of supervising compliance with the obligations contracted by virtue of the collective agreement, all of it for the defense and protection of the interests of its affiliates. This obligation extended to the limited supervision of all the local filial unions in the different towns of the Island. In this respect, it is significant the manner in which his compensation was fixed, always considering him equal to an employee of the enterprise in the field to which he had been engaged prior to being designated to preside the Union, and that he preserved all the fringe benefits provided for the employees in the contract. All these concurring circumstances convince us that regarding these activities of daily supervision in compliance with the collective agreement in the metropolitan area and in the Island, the plaintiff was an employee of the Union, and if while performing such activities he worked in excess of eight hours a day, the Union—as an employer—is bound to pay him therefor at double rate.

██ We should not forget that the legislation regarding the regular working hours and days is an effective measure in the protection of the health, security, and life of the workers. It seems eminently fair that the Unions—a spearhead in the establishment of this measure for social revindication —be the first to practice what they preach. A contrary solution would devaluate the content of this right.

 A mere examination of plaintiff's duties, to which we have been referring, that is, excluding those generally associated with the direction of a labor organization, points out that in relation to the same he is not excluded as being an executive officer or an administrator. In *Piñán* v. *Mayagüez Sugar Co.*, 84 P.R.R. 86 (1961), ratified in *Morales* v. *Superior Court*, 84 P.R.R. 119 (1961), we indicated that beginning January 15, 1952, the determination of whether or not plaintiff was an executive officer depended on the concurrence of the requirements enumerated in Article 1

of the Regulations approved by the Secretary of Labor to define said phrase. 29 R.&R.P.R. § 246e-1.[8] A similar pronouncement is applicable for the purpose of determining whether we are dealing with an administrator as defined in the regulations above-mentioned. 29 R.&R.P.R. § 246e-2.[9]

---

[8] Said article reads as follows:

"§ 246e-1. *Executive*

"The term 'executive', for the purposes of sec. 33 of the Minimum Wage Act of Puerto Rico [29 L.P.R.A. § 246e], shall mean:

"(1) any employee

"(A) whose primary duty consists of the management of the establishment in which he is employed or of a customarily recognized department or subdivision thereof; and

"(B) who customarily and regularly directs the work of two or more other employees therein; or of a department or subdivision thereof; and

"(C) who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring and firing and as to the advancement and promotion or any other change of status of other employees will be given special attention; and

"(D) who customarily and regularly exercises discretionary powers; and

"(E) who does not devote over 20% of his workweek to activities not directly or intimately related to the performance of the work described in paragraph (1), clauses (A) to (D) of this section; provided, that this clause (E) shall not apply in the case of an employee who is in sole charge of an independent establishment or a physically separated branch establishment; or when he owns at least a 20% interest in the enterprise he works for; and

"(F) who is compensated for his services on a fixed basis (by day, week, fortnightly, or longer periods) equivalent to a weekly salary of not less than $30 exclusive of board, lodging, or other facilities; or

"(2) any employee

"(A) whose work complies with the requirements of paragraph (1), clauses (A) and (B) of this section; and

"(B) who is compensated for his services on a fixed basis (by day, week, fortnightly, or longer periods), equivalent to a weekly salary of not less than $100, exclusive of board, lodging, or other facilities."

[9] Said article reads as follows:

"§ 246e-2. *Administrator*

"The term 'administrator' for the purposes of sec. 33 of the Minimum Wage Act of Puerto Rico [29 L.P.R.A. § 246e] shall mean:

It suffices to say that here the employment does not imply the exercise of discretionary faculties.

By virtue of the foregoing, the judgment rendered by the Superior Court, San Juan Part, on April 17, 1962, will be reversed, and the case remanded in order that after consideration of the evidence presented, the plaintiff be compensated at double rate the extra hours worked as an employee, according to this opinion.

---

"(1) any employee

"(A) whose primary duty consists of the performance of office work or non-manual work outside the office being either directly related to management policies or with general business operations of the employer or the clients of the employer; and

"(B) who customarily and regularly exercises discretion and independent judgment; and

"(C) (i) who regularly and directly assists the owner or one of the owners of the enterprise, or an employee employed in an executive or administrative capacity (as such terms are defined in this Division); or

"(ii) who performs under only general supervision work of a technical and specialized nature requiring special training, experience, or knowledge; or

"(iii) who executes under only general supervision special assignments and tasks; and

"(D) who does not devote over 20% of his work-week to activities not directly or intimately related to the performance of the work described in paragraph (1), clauses (A) to (C) of this section; and

"(E) who is compensated for his services on a fixed basis (by day, week, fortnightly, or longer periods) or on a percentage or fee basis equivalent to a monthly salary of not less than $200, exclusive of board, lodging, or other facilities; or

"(2) any employee

"(A) whose work complies with the requirements of paragraph (1), clauses (A) and (B) of this section; and

"(B) who is compensated for his services on a fixed basis (by day, week, fortnightly, or longer periods) or on a percentage or fee basis equivalent to a weekly salary of not less than $100, exclusive of board, lodging, or other facilities."