**UNITED STATES TRUCKING CORPORATION, Plaintiff,**

**v.**

**John E. STRONG, Joseph M. Mangan, Walter O'Leary, Union Trustees,**

**Joseph M. Adelizzi, George V. Conboy and James E. Whelan, Employer Trustees,**

**and**

**Hugh E. Sheridan, Impartial Chairman, of the Pension Fund of New York City Trucking Industry, Local No. 807 and Truck Drivers and Chauffeurs Union, Local No. 807, Defendants.**

United States District Court
S. D. New York.
March 11, 1965.

Melvin C. Hartman, New York City, for plaintiff.

Zelby & Burstein, New York City, for Trustees and Impartial Chairman.

Cohn & Glickstein, New York City, for Truck Drivers and Chauffeurs Union, Local No. 807.

BONSAL, District Judge.

Plaintiff, United States Trucking Corporation, has instituted an action against the Trustees and the Impartial Chairman of the Pension Fund of New York City Trucking Industry, Local No. 807 (Pension Fund), and Truck Drivers and

Chauffeurs Union, Local No. 807 (Union), seeking a declaratory judgment that by reason of the participation of the Union in the Pension Fund, payments to the Trustees by employers are in violation of Section 302 of the Labor Management Relations Act (LMRA) (29 U.S.C. § 186). Defendants have answered, admitting all material allegations of the complaint, and defendant Union moves for judgment on the pleadings on the ground that as a matter of law such employer payments do not violate the statute. The Trustees of the Pension Fund have filed a memorandum stating that they take no position on the Union's motion for judgment on the pleadings, but urging that a declaratory judgment be entered. The memorandum of the Trustees supports the position taken by the Union.

The Union is the collective bargaining representative for approximately 10,000 employees engaged in the trucking and related industries in and around New York City. On December 1, 1950, as the result of collective bargaining between the Union and the trucking companies, the Pension Fund was created pursuant to an Agreement and Declaration of Trust. The Pension Fund is administered by six Trustees—three selected by the Union, three by the employers (other than the Union)—and by an Impartial Chairman selected by the Trustees, who acts in the event of a tie. The Agreement and Declaration of Trust provides that the Union shall be deemed an employer thereunder except for the purpose of the removal or the appointment of employer trustees.[1]

The Agreement and Declaration of Trust provides, in Article I, Section 3, that "The term PENSION FUND as used herein shall mean all contributions to the trust fund created hereunder received by the Trustees *under said collective bargaining agreements* * * *" Article I, Section 8 defines "contributions" as "the payments required to be made to the Pension Fund by the Employer and the Employees *under the collective bargaining agreement between the Employer and the Union.*" Article IX, Section 7 provides that "The failure of an Employer to pay the contributions required hereunder promptly when due shall *be a violation of the collective bargaining agreement between the said Employer and the Union* as well as a violation of the Employer's obligations hereunder." (Italics the Court's.)

By resolution of September 5, 1963, the Trustees adopted certain Rules and Regulations under the Pension Plan, which stipulate, in Article I, Section 6, defining "Covered Employment", that Covered Employment shall include fulltime service as an officer or an employee of the Union, provided that contributions are made to the Fund with respect to such service equal in rate to the rate of contributions contemporaneously in ef-

---

1. Article I, Sections 1 and 2 of the Agreement and Declaration of Trust, as amended, provide as follows:

"Section 1. The term EMPLOYER as used herein shall mean each employer who has presently in force or who hereafter executes a collective bargaining agreement with the Union providing for such Employer's participation in the Pension Fund and who has adopted this Agreement and Declaration of Trust (hereinafter called the "Trust Agreement") in the manner herein provided. For the purposes of this Agreement, Truck Drivers and Chauffeurs Union, Local 807 shall be deemed to be an Employer within this definition, provided, however, that Truck Drivers and Chauffeurs Union Local 807 shall not be deemed to be an Employer for the pur-

pose of the removal or the appointment of Employer Trustees.

"Section 2. The term EMPLOYEES as used herein shall mean all employees covered by a collective bargaining agreement between an Employer and the Union providing "for such Employer's participation in the Pension Fund, and shall be deemed to include any employees who may leave the employ of one Employer and enter the employ of another Employer as herein defined. For the purposes of this Agreement, Truck Drivers and Chauffeurs Union, Local 807 shall be deemed to be an Employer within this definition, provided, however, that Truck Drivers and Chauffeurs Union, Local 807 shall not be deemed to be an Employer for the purpose of the removal or the appointment of Employer Trustees."

fect for participating employers and employees.

Since 1950, the trucking companies having collective bargaining agreements with the Union have been making contributions to the Pension Fund on behalf of their employees at the rates stipulated in the collective bargaining agreements as amended from time to time, and the Union has been making contributions to the Pension Fund on behalf of its own officers and employees at the rates fixed in the collective bargaining agreements with the trucking companies. Under the current collective bargaining agreement the plaintiff is required to make payments to the Pension Fund.

The issue raised is whether the inclusion of the Union, denominated as an employer, and the Union's officers and employees as beneficiaries under the Pension Plan, renders payments by the trucking company employers, including plaintiff, to the Pension Fund and their receipt by the Trustees, unlawful under Section 302 of the LMRA (29 U.S.C. § 186). The relevant provisions of Section 302 are:

Sec. 302(a)

"It shall be unlawful for any employer * * * to pay * * * any money * * *

"(1) to any representative of any of his employees who are employed in an industry affecting commerce; * * *."

Sec. 302(c)

"The provisions of this section shall not be applicable * * *

"(5) with respect to money * * * paid to a trust fund established by such representative for the sole and exclusive benefit of the employees of such employer, and their families and dependents (or of such employees, families, and dependents jointly with the employees of other employers making similar payments, and their families and dependents) * * *."

Defendant, in its motion for judgment on the pleadings, contends, on the basis of the facts, that the Union is acting as an employer with respect to the Pension Fund and not as a labor organization, and that, accordingly, payments to the Pension Fund are exempted by Section 302(c) (5) from the prohibitions of Section 302(a) and (b) of the LMRA.

Plaintiff, in opposing the Union's motion, contends that the Union is not an employer with respect to the Pension Fund within the meaning of Section 302 (c) (5), even though so denominated in the Agreement and Declaration of Trust, and that, accordingly, the 302(c) (5) exemption does not apply, and payments by plaintiff and other trucking companies to the Pension Fund are prohibited by Section 302(a).

Except for two recent cases in the District Court of Missouri, Kroger Co. v. Blassie, 225 F.Supp. 300 (E.D.Mo.1964) and Local No. 688, Int'l Bhd. of Teamsters v. Townsend, 229 F.Supp. 417 (E. D.Mo.1964), both of which are on appeal to the Court of Appeals for the 8th Circuit, it is conceded that the issue here presented is one of first impression. The Missouri District Court held in effect that under Section 302(c) (5) a union could not be an employer in a pension plan as to which it was also the collective bargaining agent, and that this was true whether or not the union participated in the appointment or removal of employer trustees.

The Union disagrees with Blassie and Local No. 688, taking the position that it is acting as an employer with respect to the Pension Fund and not as a representative of the trucking company employees. In addition to referring to Article I, Sections 1 and 2 of the Agreement and Declaration of Trust, the Union relies on Section 2(2) of the LMRA, (29 U.S.C. § 152(2)), which defines "employer" as including "any person acting as an agent of an employer, directly or indirectly, but shall not include * * * any labor organization (other than when acting as an employer) * * *." The Union points out that it makes the same

contributions to the Pension Fund as do the trucking company employers, and that these contributions are made for the benefit of its own officers and employees. In so doing, the Union urges that it is acting as an "employer".

However, it is clear that the existence of the Agreement and Declaration of Trust, of the Pension Fund and its Trustees, and the requirement that contributions be made to the Pension Fund at specified rates, are all the fruits of the Union's collective bargaining with the trucking companies.

It is the Union's collective bargaining which is the controlling factor throughout, and in collective bargaining the Union is acting as a labor organization and not as an employer.[2] The nature and amount of the contributions made by the trucking company employers to the Pension Fund constitute a form of compensation to the employees whom the Union represents and, as such, natural and essential subjects of collective bargaining. See Inland Steel Co. v. NLRB, 7 Cir., 170 F.2d 247, 12 A.L.R.2d 240 (7th Cir. 1948), cert. denied, 336 U.S. 960, 69 S. Ct. 887, 93 L.Ed. 1112 (1949).

Therefore, in construing Section 302 (c) (5), account must be taken of the basic scheme for collective bargaining which Congress envisioned in enacting Section 302. As stated in Arroyo v. United States, 359 U.S. 419, 424–425, 79 S.Ct. 864, 868, 3 L.Ed.2d 915 (1959), "When Congress enacted § 302 its purpose was * * * to deal with problems peculiar to collective bargaining. The provision was enacted as part of a comprehensive revision of federal labor policy in the light of experience acquired during the years following passage of the Wagner Act, * * * and was aimed at practices which Congress considered in-

imical to the integrity of the collective bargaining process."

Collective bargaining means across the table bargaining. See NLRB v. Insurance Agents Int'l Union, 361 U. S. 477, 488, 80 S.Ct. 419, 4 L.Ed.2d 454 (1959). As Judge Parker said in American Enka Corp. v. NLRB, 119 F.2d 60 (4th Cir. 1941), "Collective bargaining becomes a delusion and a snare if the employer, either directly or indirectly, is allowed to sit on both sides of the bargaining table; * * *." For the same reason, a labor organization may not sit on both sides of the bargaining table, which may occur if it is deemed an "employer" for the purpose of the Pension Fund. A labor organization may not have a possible conflict of interest with the employees it represents, nor a possible common interest with their employers on an issue which is a subject of collective bargaining. On the contrary, the Union must act solely for the employees whom it represents. Is it acting solely for the employees it represents when, qua employer, it must consider its own financial ability to make an employer's contributions to the Pension Fund on behalf of its own employees at the same rate as the trucking company employers and the effect this may have on the dues or assessments which the employees for whom it is bargaining may be required to pay to the Union? Is it acting solely for the employees it represents when, qua employer, it must consider (as do the trucking company employers) the effect the employees' rates of contribution will have on its own officers and employees and on the Union's salary and wage scale? The possibility of conflict of interest and perhaps common interests arising between the Union and the trucking companies is obvious.

---

2. The reference in Section 2(2) of the LMRA (29 U.S.C. § 152(2)) "other than when acting as an employer" was a recognition that labor organizations have grown in size and importance, that many of them have a substantial number of employees of their own, and that they are acting as employers in bargaining with their own employees through labor organizations of their employees' choosing. See Office Employees Int'l Union, Local No. 11 AFL-CIO v. NLRB, 353 U.S. 313, 77 S.Ct. 799, 1 L.Ed.2d 846 (1957); cf. International Ladies' Garment Workers Union v. NLRB, 339 F.2d 116 (2d Cir. 1964).

Of course, there is nothing in Section 302 to prevent the Union, acting as an employer, from joining with other unions, similarly acting as employers, in negotiating a common pension fund with the collective bargaining agents for their respective employees, or, indeed, from joining other employers in a common pension fund where the Union is not the collective bargaining agent for the employees of the other employers.

Under the facts here, the Union is acting as a labor organization and not as an employer.

Since the Union is a labor organization and not an employer for the purposes of Section 302(c) (5), the exemption of Section 302(c) (5) does not apply,[3] and payments by the trucking company employers to the Pension Fund, and the receipt thereof by the Trustees, violate Sections 302(a) and (b). As the Supreme Court stated in United States v. Ryan, 350 U. S. 299, 76 S.Ct. 400, 100 L.Ed. 335 (1956), Section 302 prohibits employers from making any payments to representatives of their employees, with certain exceptions stated in the statute. It is conceded that the Pension Fund and its Trustees are, for the purposes of Section 302, "representatives" of the trucking companies' employees. Indeed, the reasoning in Ryan and the holdings in the subsequent cases of Mechanical Contractors Ass'n of Philadelphia v. Local Union 420, 265 F.2d 607 (3rd Cir. 1959) and Local No. 2 of Operative Plasterers and Cement Masons Int'l Ass'n v. Paramount Plastering, Inc., 310 F.2d 179 (9th Cir. 1962) would require the Court to reach such a conclusion even if the issue were in dispute.

For the foregoing reasons, the Court holds that the Pension Fund does not come within the exemption of Section 302(c) (5) and therefore payments by employers to the Trustees of the Pension Fund violate Section 302(a). From the

effective date of the judgment to be entered herein it shall be unlawful for the plaintiff to make payments to the Trustees or for the Trustees to accept such payments so long as the Union participates as an "employer" in the Pension Fund. Defendant Union's motion for judgment on the pleadings is denied. However, the material allegations of the complaint being admitted as true in the answers, and the Court having decided the issue of law in favor of the plaintiff, the plaintiff is entitled to a declaratory judgment that payments by the plaintiff to the Pension Fund or their receipt by the Trustees shall, from the effective date of the judgment, be unlawful as in violation of Section 302 of the LMRA, and plaintiff shall be entitled to such other relief as may be appropriate. The form of the judgment shall be settled, on notice to all parties, at a hearing before the Court, and provision shall be made for a stay of the relief granted until final determination of the appeal to be taken by the Union.

Settle judgment accordingly.

---

3. Since Section 302(c) (5) applies only to pension funds which are created for the sole and exclusive benefit of employees of contributing *employers*, the Union's con-

tributions to the Pension Fund on behalf of its officers and employees take the Pension Fund outside the scope of the exemption.