Argued and submitted September 12, 1995, decision of the Court of Appeals affirmed; final order of the Employment Relations Board affirmed May 9, 1996

## CENTRAL CATHOLIC EDUCATION ASSOCIATION,
*Petitioner on Review,*

*v.*

## ARCHDIOCESE OF PORTLAND,
*Respondent on Review.*

## (ERB PR-1-93; CA A81866; SC S42194)

916 P2d 303

Gene Mechanic, Portland, argued the cause and filed the briefs for petitioner on review.

Thomas M. Triplett, of Schwabe Williamson & Wyatt, Portland, argued the cause for respondent on review. With him on the brief was Mildred J. Carmack.

GRABER, J.

**GRABER, J.**

Central Catholic Education Association (the union) sought judicial review of the dismissal by the Employment Relations Board (ERB) of the union's amended petition for certification as the exclusive bargaining representative for certain employees at Central Catholic High School (CCHS). The Court of Appeals affirmed ERB's order. *Central Catholic Ed. Assn. v. Archdiocese of Portland*, 133 Or App 280, 285, 891 P2d 1318 (1995). For the reasons that follow, we also affirm.

## I. FACTS AND PROCEDURAL BACKGROUND

CCHS is a private secondary school owned and operated by the Archdiocese of Portland (the Archdiocese). On February 1, 1993, the union filed an amended petition with ERB, seeking certification as the exclusive bargaining representative of a unit of teachers and support personnel employed at CCHS. The Archdiocese filed timely objections to the union's petition. ERB informed the union that it should obtain a declination of jurisdiction from the National Labor Relations Board (NLRB), so that ERB could consider the union's petition. NLRB declined jurisdiction on April 20, 1993.[1]

Thereafter, ERB conducted a hearing. ERB concluded that it did not have jurisdiction over the parties, because the Archdiocese is not an "employer" as that term is

---

[1] The NLRB ruled:

"The Board is precluded from asserting jurisdiction where a union seeks to represent a unit of teachers in a church operated school whose purpose and function in substantial part is to propagate a religious faith. *NLRB v. Catholic Bishop of Chicago*, 440 US 490[, 99 S Ct 1313, 59 L Ed 2d 533 (1979)]. While the unit petitioned for may include some positions that might not be appropriately included in a unit of teachers, no petition has been filed for a union of nonteachers into which these positions might be appropriately placed. It is unnecessary for the Board to consider further the appropriate unit placement of any positions within the petitioned for unit.

"Accordingly, proceeding with the processing of a petition for certification of a bargaining unit where the Board is precluded from asserting jurisdiction is inappropriate and unnecessary." (Some citations omitted.)

In *Catholic Bishop of Chicago*, the Supreme Court of the United States held that the NLRB could not exercise jurisdiction over lay faculty members at a parochial school. 440 US at 507.

defined in ORS 663.005(4) and, therefore, the Oregon stat-
utes regarding labor relations and collective bargaining were
not applicable to the Archdiocese. Accordingly, ERB dis-
missed the union's amended petition. The union sought judi-
cial review.

In the Court of Appeals, the union asserted that
"ORS 183.482 gives the Court of Appeals jurisdiction[2] to
review final orders of ERB." The Archdiocese filed a motion to
dismiss the union's petition for judicial review, arguing that
ORS 183.482 did not grant jurisdiction to the Court of
Appeals. The Court of Appeals denied the motion to dismiss.
On the merits, the Court of Appeals held that ERB did not
have jurisdiction over the Archdiocese. Accordingly, the
Court of Appeals affirmed ERB's order of dismissal. *Central
Catholic Ed. Assn.*, 133 Or App at 285.

In this court, the union argues that judicial review is
available in this matter and that ERB has jurisdiction over
the Archdiocese. In response, the Archdiocese makes three
arguments: (1) judicial review is not available in the circum-
stances presented; (2) assuming that the Court of Appeals
could consider the merits, ERB does not have jurisdiction
over the Archdiocese under the terms of ORS 663.005(4)(f);
and (3) assuming that that statute purports to give ERB
jurisdiction, ERB may not assert jurisdiction in this instance,
because to do so would violate the Oregon and United States
Constitutions. We hold that judicial review was available in
the Court of Appeals in this matter under ORS 663.220 and
that ERB properly dismissed the union's amended petition
for lack of jurisdiction. Accordingly, we do not reach the third
argument made by the Archdiocese.

## II.   AVAILABILITY OF JUDICIAL REVIEW
UNDER ORS 183.482 or 663.220

■      We begin our analysis with the Archdiocese's argu-
ment that judicial review was not available in the Court of

---

[2] The word "jurisdiction" here means the authority of the appellate court to
consider the merits of this case. As will be seen below, the "jurisdiction" of the
agency over the underlying dispute also is a separate issue before us.

Appeals. As noted, the union asserted in its petition for judicial review in the Court of Appeals that ORS 183.482 provides a basis for judicial review. The Archdiocese argues that ORS 663.220, rather than ORS 183.482, is the proper source for judicial review in this kind of case and that ORS 663.220 does not permit judicial review in the specific circumstances presented.

The parties' contentions require us to interpret ORS 183.482 and 663.220. *See PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993) (discussing method of statutory interpretation).

ORS 183.482 provides in part:

"Jurisdiction for judicial review of contested cases is conferred upon the Court of Appeals. Proceedings for review shall be instituted by filing a petition in the Court of Appeals."

That statute delineates the scope of and procedure for judicial review for certain administrative agency proceedings. A final order from an administrative agency generally is subject to those review procedures. *See* ORS 183.480(2) ("[j]udicial review of final orders of agencies shall be solely as provided by ORS 183.482, 183.484, 183.490 and 183.500"). The judicial review provided in ORS 183.482 is available to any person or party adversely affected by a final order of an administrative agency. ORS 183.480(1).

ORS 663.220 is a more specific statute concerning judicial review, which expressly applies to ERB orders. It provides in part:

"(1)  Any person aggrieved by a final order of [ERB] granting or denying in whole or in part the relief sought may obtain a review of the order in the Court of Appeals * * *.

"(2)  On the filing of the petition, the court * * * has * * * jurisdiction to * * * make and enter a decree enforcing, modifying and enforcing as so modified, or setting aside in whole or in part the order of the board."

ORS 663.220(1) provides a specific means by which "[a]ny person aggrieved by a final order of [ERB]" may seek judicial

review of that order. In that regard, ORS 663.220(1) is identical to ORS 183.482.

■  When ORS 183.482 and 663.220 are read together, the argument of the Archdiocese — that ORS 663.220 is the exclusive means by which the union may seek judicial review of ERB's order in this case — gains support. Under the union's proposed reading of ORS 183.482, *any* final order from ERB would be reviewable in the Court of Appeals under the procedures delineated in ORS 183.482, which would make the procedures delineated in ORS 663.220 surplusage. Ordinarily, this court will not read statutes in context in a way that "renders one statute ineffective." *Vaughn v. Pacific Northwest Bell Telephone*, 289 Or 73, 83, 611 P2d 281 (1980).

■  The Archdiocese's argument also is strengthened by the fact that, when this court interprets a statute, it adheres to the rule that a specific legislative intent controls over a general intent. ORS 174.020; *PGE*, 317 Or at 611. The text of ORS 663.220 supports a conclusion that the legislature intended that provision to be a *specific* means of judicial review for decisions *of ERB*. Although the review procedures provided in ORS 183.482 and 663.220 are similar, they are not identical. For example, proceedings brought in the Court of Appeals under ORS 663.220 "shall be heard expeditiously, and if possible within 10 days after they are docketed." ORS 663.225. There is no similar requirement for proceedings brought under ORS 183.482. To give consistent effect to such different treatment of ERB orders, the specific statute must control over the general.

After our review of the text and context of ORS 183.482 and 663.220, we conclude that the legislature intended for ORS 663.220 to apply to judicial review of an ERB order.

■  The Archdiocese next argues that, under ORS 663.220, the union is not entitled to seek review of ERB's decision to dismiss the union's amended petition. ORS 663.220 provides in part that "[a]ny person aggrieved by a final decision of [ERB] may obtain a review of the order in the

Court of Appeals." The Archdiocese reasons that ERB's determination that it did not have jurisdiction over the Archdiocese (and, therefore, that an election would not be held) does not constitute a "final order" reviewable under ORS 663.220.

The phrase "final order" is not defined in ORS chapter 663. Nor do other related statutes provide any guidance as to the meaning of that term as it is used in ORS 663.220.

The Archdiocese argues that ERB's order in this case is a certification decision left solely to the discretion of ERB. The Archdiocese reasons that the rights and procedures contained in ORS chapter 663 are based on the rights and procedures contained in the National Labor Relations Act, 29 USC §§ 159-60 (1988) (NLRA). The Archdiocese asserts that, under the NLRA, NLRB certification decisions are not judicially reviewable. The Archdiocese concludes that, under ORS chapter 663, ERB certification procedures likewise are not judicially reviewable.

The procedures contained in ORS chapter 663 clearly were adopted from the procedures provided in the NLRA. *See* Legislative Interim Committee on Labor-Management Relations, *Report of the Legislative Interim Committee on Labor-Management Relations*, 7 (1970) (stating that the bill that became ORS chapter 663, regulating labor-management relations in the private sector, is "legislation that * * * create[s] regulatory provisions closely paralleling those in the NLRA"). Specifically, the procedures delineated in ORS 663.220 were taken from its federal counterpart, 29 USC § 160(f).[3] In the circumstances, the Oregon legislature is

---

[3] 29 USC § 160(f) provides:

"Any person aggrieved by a final order of the Board granting or denying in whole or in part the relief sought may obtain a review of such order in any United States court of appeals in the circuit wherein the unfair labor practice in question was alleged to have been engaged in or wherein such person resides or transacts business, or in the United States Court of Appeals for the District of Columbia, by filing in such a court a written petition praying that the order of the [National Labor Relations] Board be modified or set aside. A copy of such petition shall be forthwith transmitted by the clerk of the court to the Board, and thereupon the aggrieved party shall file in the court the record in the proceeding, certified by the Board, as provided in section 2112 of title 28. Upon the filing of such petition, the court shall proceed in the same manner as in the case of an application by the Board under subsection (e) of this section, and shall have the same jurisdiction to grant to the Board such temporary relief or restraining order as it deems just and proper, and in like manner to make and

deemed to have incorporated the then-extant interpretations of 29 USC § 160(f) by the Supreme Court of the United States (if any there were) into ORS 663.220 when it adopted ORS 663.220. *See State v. Cooper*, 319 Or 162, 167-68, 874 P2d 822 (1994) ("When the Oregon legislature adopts a statute modeled after another jurisdiction, an interpretation of that statute by the highest court of that jurisdiction that was rendered in a case decided before adoption of the statute by Oregon is considered to be the interpretation of the adopted statute that the Oregon legislature intended.").

When the legislature enacted ORS 663.220 in 1971 (Or Laws 1971, ch 729, § 28), however, the Supreme Court of the United States had *not* addressed whether a decision by the NLRB not to certify a union for want of jurisdiction constituted a final order, as to which judicial review is available in a federal Court of Appeals under 29 USC § 160(f). The leading case addressing the availability of judicial review of NLRB certification decisions, *A.F. of L. v. Labor Board*, 308 US 401, 60 S Ct 300, 84 L Ed 347 (1940), left that question open.

The issue before the Supreme Court in *A.F. of L.* was "whether a *certification* by the National Labor Relations Board * * * that a particular labor organization * * * is the collective bargaining representative of the employees in a designated unit * * * is reviewable[4] by the Court of Appeals" under 29 USC § 160(f). 308 US at 401-02 (emphasis added). In that case, one union objected to the NLRB's certification of a rival union as the collective bargaining representative of a unit of employees. *Id.* at 402-03. The Court held only that the NLRB's *certification decision* was not reviewable in the Court of Appeals. *Id.* at 411.

---

enter a decree enforcing, modifying, and enforcing as so modified, or setting aside in whole or in part the order of the Board; the findings of the Board with respect to questions of fact if supported by substantial evidence on the record considered as a whole shall in like manner be conclusive."

Except for a few grammatical and enumeration alterations, the only difference between ORS 663.220 and 29 USC § 160(f) is that ORS 663.220 contains cross-references to the pertinent state (instead of federal) courts and statutes.

[4] *A.F. of L.* uses the term "reviewable" to refer to the availability of judicial review — *i.e.*, to refer to "appealability."

The Archdiocese argues that the Court's holding in *A.F. of L.* forecloses judicial review in this case. We disagree.

In *A.F. of L.*, the Court framed the question before it as "whether the certification by the [National Labor Relations] Board is an 'order' which * * * is made reviewable upon petition to the Court of Appeals." *Id.* at 404. The Court stated that such decisions were not reviewable, because allowing review at that juncture would delay substantially the holding of representation elections, and Congress wanted to avoid such delays. *See id.* at 410-11 nn 2-3 (quoting the legislative history surrounding the passage of the NLRA). The Court also pointed out that, although an aggrieved party could not appeal an NLRB certification determination before an election, the appellate courts could review that decision after the election. After an election, either the employees or management could refuse to bargain, thereby committing an unfair labor practice and triggering the review mechanisms provided in 29 USC § 160(f). *Ibid.*; *see also Boire v. Greyhound Corp.*, 376 US 473, 477-78, 84 S Ct 894, 11 L Ed 2d 849 (1964) ("That this indirect method of obtaining judicial review imposes significant delays upon attempts to challenge the validity of Board orders in certification proceedings is obvious. But it is equally obvious that Congress explicitly intended to impose precisely such delays."). But even those slower review methods are unavailable when the NLRB declines to assert jurisdiction, because nothing further occurs to trigger those later opportunities. The Court's decision in *A.F. of L.* did not address whether an NLRB determination that it lacked jurisdiction over an employer was reviewable under the mechanisms provided in 29 USC § 160(f). The Court's decision in *A.F. of L.* is not as broad as the Archdiocese asserts.

We thus return to the usual method of analyzing an Oregon statute. The text of ORS 663.220 suggests that the legislature *did* intend to allow judicial review, under that statute, of an ERB dismissal for lack of jurisdiction of a union's certification petition. When the legislature adopted ORS 663.220, it understood that ERB certification decisions were "orders" as that term was used in ORS 663.220. *See Boire*, 376 US at 476-79 (repeatedly referring to an NLRB certification decision as an "order"). It is equally clear that

ERB's order dismissing the union's certification was "final," as that word is commonly used. *See PGE*, 317 Or at 611 ("words of common usage typically should be given their plain, natural, and ordinary meaning"). "Final" is defined in part as:

> "1 a (1) : not to be altered or undone : CONCLUSIVE, DECI-SIVE * * * b (1) : ending a court action or proceeding leaving nothing further to be determined by the court or to be done * * * 2 a : relating to or occurring at the end or conclusion : LAST, TERMINATING." *Webster's Third New Int'l Dictionary*, 851 (unabridged ed 1993).

ERB's decision to dismiss the union's petition for lack of jurisdiction terminated the union's complaint. It was "final."

We conclude that ERB's dismissal of the union's amended petition was a "final order" under ORS 663.220. The union is a "person aggrieved" by that order, and the Archdiocese does not argue otherwise. Accordingly, the union's petition for judicial review of ERB's order was properly before the Court of Appeals.

## III. ERB'S JURISDICTION OVER THE ARCHDIOCESE

■ On the merits, the union argues that ERB erred when it dismissed the union's amended petition for want of jurisdiction over the Archdiocese. For the following reasons, we conclude that ERB did not err.

Under ORS chapter 663, certain employees are allowed to organize and bargain collectively with their employers. "Employee" and "employer" are defined by statute. ORS 663.005(4) provides in part:

> " *'Employer'* includes any person acting as an agent of an employer, directly or indirectly, but *does not include*:
>
> "* * * * *
>
> "(f) *Any person subject to the jurisdiction of the National Labor Relations Board under its existing jurisdictional standards*, pursuant to the Labor Management Relations Act of 1947, as amended (29 U.S.C. 141 to 187)." (Emphasis added.)

"Employee" is defined by reference to the statutory definition of "employer." ORS 663.005(3) provides in part:

" *'Employee'* includes any employee, \* \* \* but *does not include an individual*:

"\* \* \* \* \*

"(i)   *Employed by an employer subject to the jurisdiction of the National Labor Relations Board under its existing jurisdictional standards*, pursuant to the Labor Management Relations Act of 1947, as amended (29 U.S.C. 141 to 187)." (Emphasis added.)

The Archdiocese argues that the key phrase in ORS 663.005(4)(f)—"subject to the jurisdiction of the National Labor Relations Board under its existing jurisdictional standards"— refers to the *financially based* jurisdictional standards of the NLRB. In other words, the procedures delineated in ORS chapter 663 apply only to employers whose operations are too small to meet the NLRB's financially based jurisdictional standards. It is undisputed that the Archdiocese meets the financially based jurisdictional standards of the NLRB. Thus, under the Archdiocese's interpretation, it is not an "employer" under ORS 663.005(4)(f).

The union argues, in contrast, that the phrase in question refers more broadly to *any and all* reasons why the NLRB does not exercise jurisdiction. The union reasons that, because the NLRB *actually* declined jurisdiction in this case, the Archdiocese is not subject to the existing NLRB jurisdictional standards and, therefore, the Archdiocese is not excluded from being an "employer" within the meaning of ORS 663.005(4)(f).

Our task is to identify the legislature's intent in enacting ORS 663.005(4)(f). Our inquiry begins with the text and context of the statute.

The phrasing and structure of ORS 663.005(4)(f), as well as of its companion, ORS 663.005(3)(i), suggest two significant things. First, the definitions treat each employing entity as a whole. This is, an employer either is or is not within the applicable definition; as defined, an employer cannot be *partially* under ERB's jurisdiction at a given moment. Under ORS 663.005(4)(f), a *person* is not an "employer" if

that *person* is "*subject to* the jurisdiction of the NLRB under its existing jurisdictional standards." (Emphasis added.) "Subject" means, as pertinent, "falling under * * * the power * * * of another." *Webster's* at 2275. *See PGE*, 317 Or at 611 (words of common usage typically are given their ordinary meaning). Moreover, ORS 663.005(3) excludes from the definition of "employee" *any* individual who is "[e]mployed by an *employer* subject to the jurisdiction of the [NLRB] under its existing jurisdictional standards." (Emphasis added.) In other words, the statute treats an employing entity as a whole and defines ERB's jurisdiction by reference to an employer *qua* employer.

Second, the definitions contain a focal point. That focal point is the phrase, "under its existing jurisdictional standards." Grammatically, that phrase describes and limits the *nature* of the "jurisdiction of the National Labor Relations Board" to which an employer is "subject." We turn, then, to an analysis of the meaning of that focal point.

The key part of that phrase, "jurisdictional standards," is not defined. At first blush, it appears to have three possible meanings. It could refer to all standards applied by the NLRB when it decides whether to exercise its jurisdiction (as the union argues); it could refer to the financially based standards applied by the NLRB when it asserts or declines to assert jurisdiction (as the Archdiocese argues); or it could refer to the full scope of the NLRB's statutory authority.

Upon further examination, however, only the Archdiocese's reading of ORS 663.005(4)(f) remains plausible. "Jurisdictional standards," as that term is used in labor law, and in particular as it is used in reference to the NLRB's exercise of jurisdiction, is a term of art with a well-established legal meaning. *See McIntire v. Forbes*, 322 Or 426, 431, 909 P2d 846 (1996) (stating that "[a]nalysis of text also includes reference to well-established legal meanings for terms that the legislature has used").

In 1950, the NLRB announced that it would establish "certain standards which will better clarify and define" the extent to which it would exercise its jurisdiction. *Hollow Tree Lumber Co.*, 91 NLRB 635, 636 (1950). In 1954, the NLRB announced the "jurisdictional standards" that it had

set and was going to apply. *Revision of NLRB Jurisdictional Standards*, 34 LRRM 75 (1954). The NLRB defined "jurisdictional standards" as the NLRB's "standards for determining whether the [NLRB] will take jurisdiction," *Ibid.* The "jurisdictional standards" were *financially based. See id.* at 76-78 (discussing NLRB's "jurisdictional standards" over various employers as being based on financial terms). In 1958, the Board adopted and applied the announced "jurisdictional standards" and explicitly reiterated that its "jurisdictional standards" were *financially based. See Siemons Mailing Service*, 122 NLRB 81, 84 (1958) ("Under the new standards, the [NLRB] will continue to apply the concept that it is the impact on commerce of the totality of an employer's operations that should determine whether or not the [NLRB] will assert jurisdiction over a particular employer.").

In 1959, Congress enacted 29 USC § 164(c)(1), which gave explicit approval to the NLRB's discretionary declination of jurisdiction over employers that did not meet the NLRB's financially based jurisdictional standards. Pub L No. 86-257 (1959). 29 USC § 164(c)(1) provides in part:

> "The [NLRB], in its discretion, may * * * decline to assert jurisdiction over any labor dispute involving any class or category of employers, where, in the opinion of the [NLRB], the effect of such labor dispute on commerce is not sufficiently substantial to warrant the exercise of its jurisdiction."[5]

The statutory grant of discretion to the NLRB thus relates to the substantiality of effect on interstate commerce. The NLRB's "jurisdictional standards" consistently, from their inception to the present, have examined the effect on interstate commerce by reference to *financially based* criteria for various categories of employees. *See* Patrick Hardin, ed, II *The Developing Labor Law*, ch 28, p 1640 (3d ed 1992) ("the

---

[5] 29 USC § 164(c)(2) provides:

"Nothing in this subchapter shall be deemed to prevent or bar any agency or the courts of any State or Territory (including the Commonwealth of Puerto Rico, Guam, and the Virgin Islands), from assuming and asserting jurisdiction over labor disputes over which the Board declines, pursuant to paragraph (1) of this subsection, to assert jurisdiction."

There is no argument in this case that either party's proposed interpretation of ORS 663.005(4)(f) would be inconsistent with that federal statute.

[NLRB] established nine general jurisdictional standards * * * [each of which] represented a minimum annual dollar volume of business for the particular category of enterprise"); Lee Modjeska and Abigail Cooley Modjeska, *Federal Labor Law: NLRB Practice*, § 4:02, p 5 (1994) ("[t]he [NLRB] * * * has established discretionary jurisdictional standards for exercise or declination of jurisdiction * * * generally expressed in terms of the enterprise's yearly volume of business and/or amounts of interstate inflow or outflow" (footnote omitted)).

That meaning of "jurisdictional standards" was well established as a term of art in labor law before the adoption of ORS 663.005(4)(f) in 1975. Or Laws 1975, ch 163, § 1. *See Revision of NLRB Jurisdictional Standards* at 75-78 (NLRB press release describing the NLRB's "substantially complete * * * revision of its jurisdictional standards"); *Siemons Mailing Service* at 82-85 (discussing NLRB's decision to establish financially based "jurisdictional standards"). The NLRB's practice of applying its financially based "jurisdictional standards" also had been accepted by the Supreme Court of the United States before the Oregon legislature's enactment of ORS 663.005(4)(f). *See, e.g., Hattiesburg Unions v. Broome*, 377 US 126, 84 S Ct 1156, 12 L Ed 2d 172 (1964) (discussing "the jurisdictional standards established by the [NLRB]"); *Office Employes v. Labor Board*, 353 US 313, 320, 77 S Ct 799, 1 L Ed 2d 846 (1957) (discussing "the dollar volume jurisdictional standards adopted by the [NLRB]").

As noted above, the Oregon legislature modeled the labor relations provisions of ORS chapter 663 on the parallel federal law. That fact, along with the *express* reliance in ORS 663.005(4)(f) on the *NLRB's* own "jurisdictional standards," makes it especially apparent that, in 1975, the Oregon legislature used the term "jurisdictional standards" in the same way that the NLRB and the Supreme Court of the United States had been using it for some 20 years.

■ After our review of the text and context of ORS 663.005(4)(f), we conclude that the phrase "subject to the jurisdiction of the National Labor Relations Board under its existing jurisdictional standards" in the statutory definition

of "employer" refers to those employers that meet the *financially based* jurisdictional criteria applied by the NLRB pursuant to its authority under the NLRA.

The Archdiocese is not an "employer" as that term is used in ORS 663.005(4)(f). Accordingly, the Archdiocese is not covered by ORS chapter 663. ERB does not have jurisdiction over the Archdiocese and its employees. ERB did not err when it dismissed the union's amended petition.

## IV. DISPOSITION

The decision of the Court of Appeals is affirmed. The final order of the Employment Relations Board, dismissing the amended petition for certification, is affirmed.