**Nelson Eugene SOUDER et al., Plaintiffs,**

**v.**

**Peter J. BRENNAN, Secretary of Labor, et al., Defendants.**

**Civ. A. No. 482–73.**

United States District Court, District of Columbia.

Dec. 7, 1973.

Paul R. Friedman, Margaret A. Kohn, Patricia M. Wald, Washington, D. C., for plaintiffs.

Harold Titus, Jr., U. S. Atty., Arnold T. Aikens, Robert M. Werdig, Jr., Asst. U. S. Attys., Washington, D. C., for defendants.

## DECLARATORY JUDGMENT AND INJUNCTION ORDER

AUBREY E. ROBINSON, Jr., District Judge.

This cause came before this Court upon plaintiffs' motion for summary judgment and defendants' combined motion to dismiss and for summary judgment. Upon the entire record before this Court including the pleadings, interrogatories and affidavits, and upon the Memorandum Opinion of this Court dated November 14, 1973, it is hereby ordered that plaintiffs' motion for summary judgment is granted, and defendants' motions are denied. The Court having ruled that the Secretary of Labor has a duty to implement reasonable enforcement efforts applying the minimum wage and overtime compensation provisions of the Fair Labor Standards Act to patient-workers at non-Federal institutions for the residential care of the mentally ill and/or mentally retarded, it is further ordered, adjudged and declared:

A. NOTIFICATION TO THE CLASS. That the Secretary of Labor, his officers, agents, servants, and all persons acting or claiming to act in his behalf and interest [hereinafter, the "Secretary"], undertake the following notification activities:

(1) Within 120 days from the date of this Order, notify the Superintendent of each non-Federal facility for the residential care of the mentally ill and/or mentally retarded, and the chief executive officer or officers of the supervising state agency for mental health and/or mental retardation, that they have the same statutory responsibility to compensate patient-workers as non-patient workers, and that defendants intend to enforce the minimum wage and overtime compensation provisions of the Fair Labor Standards Act on behalf of patient-workers.

(2) Within 120 days from the date of this Order, inform the Superintendent of each non-Federal facility for the residential care of the mentally ill and/or mentally retarded; and the chief executive officer or officers of the supervising state agency for mental health and/or mental retardation of their obligation to maintain records of hours worked and other conditions of employment under 29 U.S.C. § 211(c) and 29 C.F.R. Part 516 for patient-workers,

just as is required for non-patient employees at the same facilities.

(3) Within 120 days from the date of this Order, contact the Superintendent of each non-Federal facility for the residential care of the mentally ill and/or mentally retarded and request that he inform patient-workers at his facility of their rights under the Fair Labor Standards Act. Indications that proper attention has been given to informing the patient-workers of their rights will be:

a. That the Superintendent has notified *in writing* every resident and his guardian of his rights under the Fair Labor Standards Act, as declared in this decision;

b. That copies of such written notifications have been posted on every living unit of residential facilities for the mentally ill and/or mentally retarded;

c. That efforts have also been made to notify all residents *orally* of their rights—e. g., by holding group meetings for present residents and by establishing procedures under which each new resident will be notified of his rights within one week of his admission. In order to increase the chances that plaintiffs will fully comprehend such oral presentations, defendants may suggest to the Superintendents and to the chief executive officers of the supervising state agencies that representatives of concerned organizations be invited to observe and perhaps to participate at such meetings;

d. That non-patient employees of all non-Federal facilities for the residential care of the mentally ill and/or mentally retarded and their collective bargaining representatives or other representatives who deal with the employer on their behalf with respect to wages, hours, or other terms and conditions of employment, have been notified of this decision.

B. REASONABLE ENFORCEMENT ACTIVITIES. Within one year from the date of this order, defendants shall contact every institution to which the Order applies so as to establish and implement the necessary procedures [including any special certifications under 29 U.S.C. § 214] whereby every patient-worker in such institutions will be paid the wages due him. After the Department of Labor has made its initial efforts to aid the institutions in establishing their procedures for paying wages, it shall continue

in the second year to give attention to investigation and enforcement of employment situations affecting the patient-workers. Thereafter, "reasonable" enforcement shall be defined to include those activities which are necessary to ensure the benefits of 29 U.S.C. §§ 206 and 207, to which patient-workers are entitled.

C. IMPLEMENTATION REPORTS. That the Secretary shall keep written records of his enforcement activities, which shall be available to the public through the Labor Department's Advisory Committee on Sheltered Workshops at six-month intervals. These reports should include a description of the activities taken to comply with the Order; the number of investigations of alleged violations of rights of patient-workers under the Fair Labor Standards Act (including a breakdown by type of establishment and number of workers involved at each such establishment), and the reason for such investigations; the results of each such investigation; and the disposition of each investigation confirming statutory violations, including lawsuits, settlements, and other enforcement activities.

D. COSTS. That Court costs be taxed to defendants.

## MEMORANDUM

This is an action for declaratory and injunctive relief presently before the Court on Plaintiffs' Motion for Summa-

ry Judgment.[1] Plaintiffs are three resident patient-workers at various state hospitals for the mentally ill or mentally retarded,[2] the American Association on Mental Deficiency,[3] and the National Association for Mental Health.[4] The American Federation of State, County and Municipal Employees, AFL–CIO (AFSCME) has joined as Intervenor-Plaintiff.[5] Defendants are the Secretary of the United States Department of Labor and his subordinates charged with implementing and enforcing the Fair Labor Standards Act of 1938 (FLSA), as amended, 29 U.S.C. § 201 et seq. Plaintiffs seek a determination that the minimum wage and overtime compensation provisions of the Act, 29 U.S.C. §§ 206–207 apply to patient-workers of non-Federal hospitals, homes, and institutions for the mentally retarded and mentally-ill (hereafter collectively referred to as the mentally ill). Plaintiffs further seek to compel the defendant Secretary of Labor and his subordinates to undertake enforcement of the said minimum wage and overtime compensation provisions.

It is undisputed that the Department of Labor has a declared policy of non-enforcement of the minimum wage and overtime provisions with regard to patient-workers at non-Federal institutions for the mentally-ill.[6] It is also clear to the Court that if the Fair Labor Standards Act does apply to such patient-workers then the policy of non-enforcement is a violation of the Secretary's duty to enforce the law.[7] Accordingly,

1. Defendants' Motion to Dismiss or, in the alternative, for Summary Judgment, was denied July 27, 1973. Defendants had contended that enforcement of the Fair Labor Standards Act is a matter entirely within the discretion of the Secretary of Labor and therefore not subject to judicial review. This position was rejected on the authority of Adams v. Richardson, 156 U.S.App.D.C. 267, 480 F.2d 1159 (1973) and Office Employees International Union v. N.L.R.B., 353 U.S. 313, 77 S.Ct. 799, 1 L.Ed.2d 846 (1957).

2. Plaintiff Nelson Eugene Souder was, at the date this lawsuit was filed, a resident-worker at Orient State Institute, Orient, Ohio. Mr. Souder was released from Orient State Institute on convalescent leave status on March 24, 1973. Mr. Souder is 47 years old and mentally retarded. He has resided at Orient State Institute since 1940.
Plaintiff Joseph Lagnone is a 32 year mentally-retarded resident-worker at Pennhurst State School and Hospital, Spring City, Pennsylvania, where he has resided since 1955.
Plaintiff Edwin Leedy died during the pendency of this action. He was a 62 year old mentally ill resident-worker at Haverford State Hospital, Haverford, Pennsylvania, where he worked from 1956 until his death in 1973.

3. The American Association on Mental Deficiency is a not-for-profit Pennsylvania Corporation headquartered in Washington, D. C. a national membership organization which includes institutional residents, parents and guardians of institutional residents, and over 9000 mental retardation professional workers.

4. The National Association for Mental Health, is a not-for-profit New York Corporation, headquartered in Arlington, Virginia, a national citizens organization for the prevention of mental illness and promotion of mental health.

5. AFSCME is an unincorporated voluntary association and labor union of more than 600,000 members which represents more than 125,000 workers in the health care field. AFSCME joins herein on behalf of its members employed in non-Federal institutions and as an organization concerned with improving health services.

6. A Department of Labor policy statement, Release G–874 (Appendix A), was promulgated November 15, 1968, interpreting the Act as covering patient-workers in certain circumstances. The Department states that policy "has not been rescinded." (Answer # 24, Defendants' Answers and Objections to Plaintiffs' Interrogatories, June 30, 1973). Nevertheless, "the Department of Labor, subsequent to the issuance of G–874, determined that it would *take no enforcement action* with respect to resident-workers because of the number of unresolved problems involved." (Id.) (emphasis added). See Department of Labor, Wage and Hour Division, Procedural Instruction, October 13, 1969 (Appendix B.)

7. Adams v. Richardson, 156 U.S.App.D.C. 267, 480 F.2d 1159 (1973). Office Employees International Union v. N.L.R.B., 353 U.S. 313, 77 S.Ct. 799, 1 L.Ed.2d 846 (1957),

the issue for resolution here is the applicability of the Fair Labor Standards Act to such patient-workers. This is a legal issue properly disposed of here by summary judgment.

■ The 1966 Amendments [8] to the Fair Labor Standards Act of 1938, extended coverage under the minimum wage and overtime provisions of the Act for the first time to, inter alia, employees of public and private non-Federal hospitals and institutions for the residential care of the mentally ill. It is clear that these amendments were intended to cover the regular professional and non-professional staff of such institutions.[9] Neither the statutory language nor the legislative history of the 1966 amendments, however, makes any direct reference to the status of pa-

tient-workers in such institutions. This fact is a matter of major concern to the Court for there are significant questions of policy and practicality underlying extension of the Act to patient-workers.[10] Nevertheless, extensive review has convinced the Court that the Act does so apply and that Plaintiffs are entitled to summary judgment.

■ A basic canon of statutory construction is that when statutory language is clear on its face and fairly susceptible of but one construction, that construction must be given to it.[11] Even where there is legislative history in point, albeit ambiguous or contradictory, it is unnecessary to refer to it and improper to allow such history to override the plain meaning of the statutory language.[12] Most certainly, then, the absence of any legislative history in

Wisconsin v. F.P.C., 373 U.S. 294, 83 S.Ct. 1266, 10 L.Ed.2d 357 (1963), Commonwealth of Pennsylvania v. Lynn, 362 F.Supp. 1363 (D.D.C.1973), Pealo v. F.H.A., 361 F. Supp. 1320 (D.D.C.1973). 29 U.S.C. §§ 202, 211, 212 and 216 and Section 602 of P.L. 89–601 are the statutory sources of the authority and duty of the Defendants to enforce the Fair Labor Standards Act, as amended. Compare, 42 U.S.C. § 2000d–1, the provision involved in Adams v. Richardson, supra. It should be noted that as state employees the individual Plaintiffs herein have no recourse to private lawsuits in Federal Courts to enforce their rights under the Act, but must rely on Defendants for enforcement. See Employees of the Department of Public Health and Welfare of Missouri et al. v. Department of Health and Welfare of Missouri et al., 411 U.S. 279, 93 S.Ct. 1614, 36 L.Ed.2d 251 (1973).

8. P.L. 89–601, § 102, September 23, 1966, 80 Stat. 830–832. (Effective Feb. 1, 1967). See 29 U.S.C. § 203(d), (r) and (s).

9. S.Rep. No. 1487, 89th Cong.2d Sess. 1 (1966) at 8, 22–23, U.S.Code Cong. & Admin.News 1966, p. 3002; H.Rep. No. 1366, 89th Cong.2d Sess. (1966) at 3, 11–12, 15, 16–17, and 18. See Employees of the Department of Public Health and Welfare of Missouri et al. v. Department of Public Health and Welfare of Missouri et al. 411 U.S. 279, 283, 93 S.Ct. 1614, 36 L.Ed.2d 251 (1973).

10. The questions of policy and practicality are intertwined, the most obvious being

questions as to whether extension of coverage will in the long run be in the best interests of the patient-workers and the public. Significantly increased costs for the operation of institutions may result, but these, on the other hand, may be offset by increased or newly imposed charges on patients for their care. The possibilities and implications of such developments are at least areas in which the Court would have expected some legislative inquiry.

11. Sea-Land Service, Inc. v. Federal Maritime Commission, 131 U.S.App.D.C. 246, 404 F.2d 824 (1968), District of Columbia National Bank v. District of Columbia, 121 U. S.App.D.C. 196, 348 F.2d 808 (1965), Arkansas Valley Industries, Inc. v. Freeman, 415 F.2d 713 (8th Cir. 1969), United States v. New England Coal and Coke Co., 318 F. 2d 138 (1st Cir. 1963), Community Blood Bank of Kansas City Area, Inc. v. F.T.C., 405 F.2d 1011 (8th Cir. 1969).

12. Hamilton v. Rathbone, 175 U.S. 414, 421, 20 S.Ct. 155, 44 L.Ed. 219 (1899), United States v. First National Bank, 234 U.S. 245, 258, 34 S.Ct. 846, 58 L.Ed. 1298 (1914), Osaka Shosen Kaisha Line v. United States, 300 U.S. 98, 101, 57 S.Ct. 356, 81 L.Ed. 532 (1937), Ex parte Collett, 337 U.S. 55, 61, 69 S.Ct. 944, 93 L.Ed. 1207 (1949), United States v. Oregon, 366 U.S. 643, 648, 81 S.Ct. 1278, 6 L.Ed.2d 575 (1961), United States v. Dickerson, 310 U.S. 554, 562, 60 S.Ct. 1034, 84 L.Ed. 1356 (1940), N.L.R.B. v. Plasterers' Union Local No. 79, 404 U.S. 116, 129, 92 S.Ct. 360, 30 L.Ed.2d 312 (1971).

point should not outweigh the words of the statute.[13]

The words of the statute here in question say simply that "employ" means "to suffer or permit to work",[14] that "employer" specifically includes "a hospital, institution, or school"[15] for the residential care of the mentally ill.[16] The terms of the Fair Labor Standards Act have traditionally been broadly construed[17] and the Congress is not only aware of but has approved of such broad construction.[18] Economic reality is the test of employment[19] and the reality is that many of the patient-workers perform work for which they are in no way handicapped and from which the institution derives full economic benefit.[20] So long as the institution derives any consequential economic benefit the economic reality test would indicate an employment relationship rather than mere therapeutic exercise. To hold otherwise

would be to make therapy the sole justification for thousands of positions as dishwashers, kitchen helpers, messengers and the like.[21]

Further support for this approach can be found in the fact that the Act contains specific exemption provisions,[22] yet Congress did not see fit to specifically exclude patient-workers from coverage. The specific exemptions granted are numerous and detailed, indicating clearly that Congress is quite capable of specifically excluding from coverage some of those who might otherwise be covered by the general provisions. Congress did not exclude patient-workers from coverage and, therefore, the Court cannot do so.

A second well-established principle of statutory construction is that the interpretation of the agency charged with administering the statute is entitled to great weight.[23] This approach

---

13. Eastern Air Lines, Inc. v. C.A.B., 122 U.S.App.D.C. 375, 354 F.2d 507, 511 (1965): "[I]t is no bar to interpreting a statute as applicable that 'the question which is raised on the statute never occurred to the legislature.'"

See Unexcelled Chemical Corp. v. United States, 345 U.S. 59, 64, 73 S.Ct. 580, 97 L.Ed. 821 (1953); National Association of Motor Bus Owners v. Brinegar, 157 U.S.App.D.C. 291, at 301, 488 F.2d 1294, at 1304 (1973).

14. 29 U.S.C. § 203(g).

15. 29 U.S.C. § 203(d).

16. 29 U.S.C. § 203(r).

17. See Gulf King Shrimp Co. v. Wirtz, 407 F.2d 508 (5th Cir. 1969); Wirtz v. Allen Green Associates, Inc., 379 F.2d 198 (6th Cir. 1966).

18. See H.Rep. No. 1366, 89th Cong.2d Sess. (1966) at 10.

19. Goldberg v. Whitaker House Cooperative, Inc., 366 U.S. 28, 33, 81 S.Ct. 933, 6 L.Ed.2d 100 (1961).

20. The Department of Labor does not take the position that all resident-workers at institutions are handicapped workers. Only where the patient's earning or productive capacity is impaired is the resident-worker considered handicapped and the institution allowed to reduce his compensation accord-

ingly under Section 14 of the Act, 29 U.S.C. § 214. Answers # 30, 33, Defendants Answers and Objections to Plaintiffs Interrogatories. June 20, 1973. This point is emphasized by the intervention of Plaintiff AFSCME on behalf of its members who perform non-professional staff work at various institutions. AFSCME contends that the use of unpaid and underpaid patient-workers constitutes the kind of unfair competition and lowering of standards that the Fair Labor Standards Act was designed to prevent.

21. The fallacy of the argument that the work of patient-worker is therapeutic can be seen in extension to its logical extreme, for the work of most people, inside and out of institutions, is therapeutic in the sense that it provides a sense of accomplishment, something to occupy the time, and a means to earn one's way. Yet that can hardly mean that employers should pay workers less for what they produce for them.

22. 29 U.S.C. § 213.

23. Udall v. Tallman, 380 U.S. 1, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965), Power Reactor Development Co. v. International Union of Elec., Radio and Mach. Workers, 367 U.S. 396, 81 S.Ct. 1529, 6 L.Ed.2d 924 (1961), D.C. Federation of Civil Associations v. Volpe, 140 U.S.App.D.C. 162, 434 F.2d 436 (1970), National Automatic Laundry and Cleaning Council v. Shultz, 143 U.S.App.D.C. 274, 443 F.2d 689 (1971).

also supports extension of coverage, for the officially stated policy of the Department of Labor provides that patient-workers may be considered employees under the statute.[24] This constitutes an official administrative interpretation, still "not rescinded", that patient-workers as a class were included in the terms of the 1966 amendments extending coverage.[25] That the policy is not enforced has been ascribed throughout the development of the present case solely to administrative difficulties and "unresolved problems" in the mechanics of enforcement.[26] The Court has accorded substantial weight to the fact that the initial and consistent interpretation of those most closely concerned with administration and enforcement of the Act has been to recognize its applicability to patient-workers.

Lastly, there is available in Section 14 of the Act, 29 U.S.C. § 214, a procedure apparently well-suited for adaptation to enforcement activities applying the Act to the mentally ill. Basically, Section 14 establishes a procedure whereby less-than-normally productive handicapped (physically or mentally) workers can be certified as such by the Secretary of Labor and paid an appropriate competitive rate for their services. The legislative history of these provisions supports the proposition that productive labor of handicapped persons was generally intended by Congress to be covered by the Fair Labor Standards Act where the statutory prerequisites for coverage are otherwise met.[27] Initial application of the Section 14 procedures to patient-workers throughout the nation may consume some time and substantial administrative resources. Yet if that is a consequence of Congress' action in extending coverage, administrative burden is no excuse for failure to implement the statutory mandate.

■■ Plaintiffs have moved for certification of the case as a class action pursuant to Rule 23, Federal Rules of Civil Procedure. The Court finds that the prerequisites of Rule 23(a) have been met and that Defendants have acted or refused to act on grounds generally applicable to the class, Rule 23(b)(2), and the motion to certify the class will therefore be granted.[28] The class will be defined as follows: All patient-workers in non-Federal institutions for the residential care of the mentally ill and mentally retarded who meet the statutory definition of employee, 29 U. S.C. § 203(d), (e), (g).[29]

24. Release G–874 (Appendix A.) See footnote 6, supra.

25. The policy statement, Release G–874, does not provide that all patient-workers are to be considered statutory employees, but would weigh the nature of the work performed by each worker and its possible therapeutic value. Thus, the Release recognizes that coverage under the Act is available for patient-workers and proceeds to the next question, whether an individual patient-worker meets the criterion of performing work of economic benefit to the institution sufficient to be considered an employee under the economic reality test. Thus Release G–874 seems at least a reasonable first-step toward defining an enforcement approach applying the statute to patient-workers. That administrative difficulties developed, however, is no excuse for totally abandoning any enforcement effort. See note 7, supra.

26. See note 6, supra. Only in a supplementary memoranda of points and authorities on the question of coverage and the legislative history of the 1966 amendments, specifically requested by the Court, have the Defendants even hinted a dispute on the question of coverage. This of course is an after-the-fact legal argument rather than a contemporaneous administrative interpretation. Defendants nowhere in their Court pleadings expressly concede the question of coverage (but see Answer to Interrogatory # 24, note 6, supra), but the issue is raised primarily at the instance of the Court because of its importance in the case.

27. See 112 Cong.Rec. 20818–19 (1966), S. Rep. No. 1487, 89th Cong.2d Sess. (1966), at 23–24, U.S.Code Cong. & Admin.News 1766, p. 3002; H.R. Conference Rep. No. 2004, 89th Cong., 2d at 13–15, 20–22 (1966).

28. See Bermudez v. United States Department of Agriculture, 490 F.2d 718 at 724–725 (D.C.Cir. 1973).

29. Defendants have opposed certification as a class action primarily on the grounds of difficulty in defining the class or identifying

The Secretary will be ordered to implement reasonable enforcement efforts applying the minimum wage and overtime compensation provisions of the Fair Labor Standards Act to patient-workers at non-Federal institutions for the residential care of mentally ill.

Counsel for the Plaintiffs are to submit appropriate Orders within ten (10) days of date.

## "APPENDIX A"

### UNITED STATES DEPARTMENT OF LABOR WAGE AND HOUR AND PUBLIC CONTRACTS DIVISIONS WASHINGTON, D. C., 20210

### APPLICABILITY OF THE FAIR LABOR STANDARDS ACT TO WORK PROGRAMS FOR PATIENTS OF HOSPITALS AND INSTITUTIONS OTHER THAN FEDERAL

*Coverage*

The 1966 Amendments to the Fair Labor Standards Act, effective February 1, 1967, provided for application of the act to hospitals and institutions primarily engaged in the care of the sick, the aged, the mentally ill or defective who reside on the premises of such hospitals or institutions (regardless of whether or not they are public or private or operated for profit or not for profit). Workshops and other types of work programs operated by hospitals and institutions are considered to be within the coverage of the act.

*Employment of Patients in Work Programs*

Pending authoritative rulings of the courts, the Department of Labor will not assert that initial participation of patients in a work program constitutes an employment relationship if the following conditions are met.

1. The tasks performed by the patient are part of a program of activities which have been determined, as a matter of medical judgment, to have therapeutic or rehabilitative value in the treatment of the patient, and

2. The patient does not displace a regular employee or impair the employment opportunities of others by performing work which would otherwise be performed by regular employees who would be employed by the hospital or institution or an independent contractor, including, for example, employees of a contractor operating the food service facilities.

After placement in the workshop, on a job in the hospital or institution, or in another establishment, an employment relationship will ordinarily develop and the provisions of the Fair Labor Standards Act will become applicable. This shift to an employment relationship may come shortly after placement or it may occur later. As a general guide, work for a particular employer, whether the hospital, institution, or another establishment, after 3 months will be assumed by the Wage and Hour and Public Contracts Divisions to be part of an employment relationship unless the employer can show the contrary.

its members. Yet the statutory criteria for definition of an "employee" relationship are long-standing and have left a chain of well-known precedent applying the law to the facts of individual situations. See notes 17–21 and accompanying text, supra. Such application, indeed, is peculiarly the domain of Defendants herein. Defendants have not otherwise disputed the existence of a class, nor the propriety of injunctive relief. Thus the argument of administrative difficulty recurs. Yet in the context of this case the Court does not find this justification for denial of a class action once the criteria of

Rule 23 are met. If unforeseen or insoluble difficulties arise, any party may bring these to the attention of the Court in seeking clarification of the definition of the class. While Defendants correctly point out that the label "patient-worker" need not be controlling where a patient in fact does work that is solely therapeutic, the economic reality test is available to determine whether the institution receives any consequential economic benefit from the patient's services. That test would not seem overly difficult in its application.

Where placements are made with successive employers for short periods of time, it is not expected in the ordinary course that such placements will be very long with a particular employer. As a general guide, work for successive employers for short periods of time after a total of 6 months will be assumed by the Wage and Hour and Public Contracts Divisions to be part of an employment relationship unless it can be shown to the contrary. When the employment relationship has developed, the applicable statutory minimum must be paid except where special minimum wages below the statutory minimum are authorized by the Wage and Hour and Public Contracts Divisions.

*Statutory Minimum Wages*

The minimum wage is $1.60 an hour for employment subject to the act before the 1966 amendments. The minimum wage for employment made subject to the act by the 1966 amendments (which includes work in covered hospitals and institutions) is now $1.15 an hour, advancing to $1.30 on February 1, 1969, and except for employment in agriculture advancing to $1.45 on February 1, 1970, and to $1.-60 on February 1, 1971.

*Certificates Authorizing Rates Below the Statutory Minimum*

The Wage and Hour and Public Contracts Divisions' regional and district offices may issue certificates authorizing special minimum wages below the statutory minimum under 29 CFR Part 524 and Part 525 for employment of handicapped workers in competitive employment and in sheltered workshops, respectively. Application forms and instructions for completion of such forms may be obtained from the regional or district office of the Wage and Hour and Public Contracts Divisions which serves the area in which the establishment or institution is located.

"APPENDIX B"

Defendants' Answer to Interrogatory No. 24 reads as follows: (filed herein June 20, 1973)

The policy expressed in Release G-874 has not been rescinded. But the Department of Labor, subsequent to the issuance of G-874, determined that it would take no enforcement action with respect to resident workers because of the number of unresolved problems involved. This determination was communicated to the regional offices of the Department's Wage and Hour Division by a procedural instruction dated October 13, 1969, which stated:

Patients or inmates who may be employees. No action shall be taken to affirm or deny an employment relationship for patients or inmates of hospitals and related institutions who are in work programs of such institutions. Releases G-874 and G-876 provide general guidance as to determination of an employment relationship in these situations; however, experience has indicated a need for more precise guidance in such cases. Questions have also been raised about the application of section 3(m) to such persons. This entire matter is under review in the NO. Where this issue is encountered in an investigation, BW shall not be computed or reflected on Form WH-51. The facts shall be obtained and included in the investigation report. The establishment employer shall be advised that no decision has been made with respect to such cases and that he will be contacted later. All other aspects of the case shall be handled in accordance with regular procedures, including BW. When the investigation has been brought to a conclusion and closed, the report shall be sent to the AA for OCE to assist in working out an acceptable solution to the problem.

Inquiries or questions, either oral or written, received from institutions, residents, employees, or other interested parties after October 13, 1969, were answered by stating that the Department currently was taking no enforcement action under FLSA with respect to work-

ing patients. Generally the person making the inquiry was informed of the right of an employee to bring his own independent action under section 16(b) of the FLSA to recover back wages.