Joseph **WEIDENFELLER** and Edwin Kryszewski, Plaintiffs,

v.

James **KIDULIS** et al., Defendants.

Civ. A. No. 73–C–572.

United States District Court,
E. D. Wisconsin.

Aug. 21, 1974.

Jordan B. Reich, Chief Staff Atty., Legal Aid Society, Milwaukee, Wis., for plaintiffs.

Thomas J. Bergen, Milwaukee, Wis., for defendants.

## MEMORANDUM OPINION AND ORDER

REYNOLDS, Chief Judge:

This is an action brought under the thirteenth amendment of the United States Constitution and the Fair Labor Standards Act in which two mentally handicapped individuals seek monetary and declaratory relief against defendants for the productive labor which they were allegedly forced to perform without compensation at the defendants' mental institutions.

Plaintiff Joseph Weidenfeller is a forty-four year old male who was born in Milwaukee, Wisconsin. He suffers from mental retardation and has been in custodial treatment facilities his entire life. He is still receiving treatment and custodial care because of his mental disabilities. Plaintiff Edwin Kryszewski is a thirty-one year old male and was also born in Milwaukee. He suffers from mental retardation and has been in custodial treatment centers for most of his life. He is presently undergoing treatment for his mental disabilities. All the expenses of both Joseph Weidenfeller and Edwin Kryszewski have been paid for through grants from the Milwaukee County Department of Public Welfare. The named defendants in this action are owners and proprietors of the Kidulis Family Group Home and Yorkville Nursing Home. Each of these family boarding homes is thus privately owned and is operated for profit.

This case arose out of the following factual context. On July 9, 1965, the two plaintiffs were permanently discharged from the Wisconsin Department of Health and Social Services Southern Colony to the defendants for custodial care and treatment. Kryszewski remained in the defendants' custody until April 27, 1973. Weidenfeller remained under defendants' care and control until October 15, 1973. Both plaintiffs were tranferred to another institution which is not a party to this suit.

During his stay at the Kidulis Family Group Home, Joseph Weidenfeller was employed on the premises. He mowed the grass, cleaned patients' rooms, and washed dishes in the kitchen. Edwin Kryszewski likewise worked during his stay at the home. His tasks included such endeavors as unloading various materials, cleaning toilets and sinks, and scrubbing the kitchen floor. Neither plaintiff was ever compensated for his work at the institution.

Plaintiffs ground their complaint in the United States Constitution, alleging that the labor they performed at the home was nontherapeutic, was solely for the economic benefit of the institution, and was physically coerced upon them. Plaintiffs consequently claim that their thirteenth amendment right against involuntary servitude has been abridged. Alternatively, plaintiffs base their allegations on the Fair Labor Standards Act which provides for the establishment of fair labor standards in employment in and affecting interstate commerce. Jurisdiction is alleged to exist by virtue of 28 U.S.C. § 1331, 28 U.S.C. § 1337, and 28 U.S.C. § 1343(1) and (2).

Presently pending before me is defendants' motion to dismiss the cause of action for failure to state a claim upon which relief can be granted or, in the alternative, to grant summary judgment on any of plaintiffs' causes of action which arose more than three years from the date of the institution of this suit because of the statute of limitations under the Fair Labor Standards Act, 29 U.S.C. § 255. I deny defendants' motion.

### I.

Defendant James Kudulis has submitted an affidavit to the court. Rule 12(b) of the Federal Rules of Civil Procedure states in part:

" * * * If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the

court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56."

■■ I have not given the plaintiffs reasonable opportunity or forewarning that this matter shall be disposed of as a Rule 56 motion, and the issues presented are not so manifestly clear that they can be decided at this time. See White v. Flemming, 374 F.Supp. 267 (E.D.Wis. 1974). As a general rule, when matters outside the pleadings are submitted to the court as part of a motion to dismiss for failure to state a claim, the court shall disregard these matters and decide the motion on the basis of the pleadings. Grand Opera Co. v. Twentieth Century-Fox Film Corp., 235 F.2d 303 (7th Cir. 1956); Flores v. Yeska, 372 F.Supp. 35 (E.D.Wis.1974). Therefore, I shall not treat the present controversy as a motion for summary judgment.

## II.

Since this matter is before the court on a Rule 12(b)(6) motion, I must respect certain standards. " * * * For the purposes of the motion, the well-pleaded material allegations of the complaint are taken as admitted; * * *." 2A Moore's Federal Practice ¶ 12.08, at 2266–2267 (2d ed. 1974). "All pleadings shall be construed as to do substantial justice." Rule 8(f), Federal Rules of Civil Procedure. " * * * [A] complaint should not be dismissed for insufficiency *unless it appears to a certainty that plaintiff is entitled to no relief under any state of facts which could be proved in support of the claim.* * * *" 2A Moore's Federal Practice ¶ 12.08, at 2271–2274 (4th ed. 1974). See also Conley v. Gibson, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

■ It is clear that throughout the United States mentally handicapped or retarded residents of both private and public institutions are often required to perform tasks, for little or no compensation, which primarily benefit the needs of the institution and not the individual.[1] The issue specifically posed by defendants' motion is what legal theories, if any, are present to aid the mentally retarded [2] in gaining entry into a federal court so that they, the mentally retarded, might resolve various conflicts between institution administrators and themselves. In the instant matter, plaintiffs have presented me with several alternative theories. I shall examine each of these separately.

### A. *The Fair Labor Standards Act*

■ The Fair Labor Standards Act of 1938, as amended in 1966, 29 U.S.C. § 201 et seq., creates a statutory scheme for the payment of minimum wages and overtime compensation to individuals covered by the Act. Among its provi-

---

1. See Freidman, "The Mentally Handicapped Citizen and Institutional Labor," 87 Harv.L. Rev. 567, 568 (1974), and footnotes cited therein. See also "Developments in the Law—Civil Commitment of the Mentally Ill," 87 Harv.L.Rev. 1190 (1974).

2. Plaintiffs in the instant matter are designated as being "mentally retarded." It is important at this juncture to distinguish between two groups of people—the "mentally ill" and the "mentally retarded." It is recognized that the treatment which is required by the mentally retarded is different than that required by the mentally ill. See Wyatt v. Stickney, 344 F.Supp. 373, 379–386 (M. D.Ala.1972), which details adequate standards for the treatment of the mentally ill,

and Wyatt v. Stickney, 344 F.Supp. 387, 395–407 (M.D.Ala.1972), which lays down adequate standards for the treatment of the mentally retarded.

Although the proper term to use to describe treatment of the mentally retarded is "habilitation," I use "treatment" interchangeably with that term. I also refer to the institutionalized mentally retarded as "residents" and "patients."

It is also important to note that "[i]n the context of the right to appropriate care for people civilly confined to public mental institutions, no viable distinction can be made between the mentally ill and the mentally retarded. * * *" Wyatt v. Stickney, supra, at 390.

sions, § 6, 29 U.S.C. § 206, provides for minimum wages; § 7, 29 U.S.C. § 207, provides for maximum hours and payment of overtime; and § 11(c), 29 U.S.C. § 211(c), states that employers covered by the Act shall keep records of wages paid and employment hours. It has been held by several courts that a right to compensation exists for residents of mental institutions under the Fair Labor Standards Act. Souder v. Brennan, 367 F.Supp. 808 (D.C.D.C. 1973); Wyatt v. Stickney, 344 F.Supp. 373, 381 (M.D.Ala.1972); Wyatt v. Stickney, 344 F.Supp. 387, 402 (M.D. Ala.1972).[3] The language of the Act supports this conclusion.[4]

█ Since the statutory language of the Fair Labor Standards Act is clear on its face, there is no need to resort to its legislative history. It is only when the meaning of the legislation is "doubtful or obscure," Wright v. Vinton Branch of the Mountain Trust Bank, 300 U.S. 440, 463, n. 8, 57 S.Ct. 556, 81 L.Ed. 736 (1937), that resort can be made to congressional reports, floor debates, or comparison of successive drafts. The importance of this canon of construction cannot be overemphasized.

█ Plaintiffs have clearly alleged that they are covered by the Fair Labor Standards Act. They further state in their complaint that defendants were engaged in activities covered by § 3(s)(4) of the Act, 29 U.S.C. § 203(s)(4), as amended,[5] in that they engaged in the care of the sick, aged, or mentally ill

---

3. In Souder v. Brennan, supra, the district court held that patient-workers of nonfederal homes, hospitals, and institutions for the mentally retarded and mentally ill are "employees" under the minimum wage and over-time compensation provisions of the Fair Labor Standards Act.

In the two Wyatt v. Stickney, supra, cases, the district court held that the mentally ill have a constitutional right to "treatment" and the mentally retarded have a constitutional right to "habilitation" consistent with the ultimate goal of allowing each respective group of persons to lead useful and meaningful lives and to return to society. In the respective appendices to each case, the court laid down a formula of minimal constitutional standards for adequate treatment of both the mentally ill and the mentally retarded. In the second Wyatt v. Stickney, 344 F. Supp. 387, at 402 (M.D.Ala.1972), concerning the rights of the mentally retarded, the Court stated:

"No resident shall be required to perform labor which involves the operation and maintenance of the institution * * *. * * * Residents may voluntarily engage in such labor if the labor is compensated in accordance with the minimum wage laws of the Fair Labor Standards Act, 29 U.S.C. § 206 as amended, 1966."

Implicit in this statement is the assumption that the mentally retarded possess a right to compensation under the Fair Labor Standards Act.

4. As Judge Robinson stated so well in Souder v. Brennan, supra, 367 F.Supp. at 813:

"The words of the statute here in question say simply that 'employ' means 'to suffer or permit to work', that 'employer' specifically includes 'a hospital, institution, or school' for the residential care of the mentally ill. The terms of the Fair Labor Standards Act have traditionally been broadly construed and the Congress is not only aware of but has approved of such broad construction. Economic reality is the test of employment and the reality is that many of the patient-workers perform work for which they are in no way handicapped and from which the institution derives full economic benefit. So long as the institution derives any consequential economic benefit the economic reality test would indicate an employment relationship rather than mere therapeutic exercise. To hold otherwise would be to make therapy the sole justification for thousands of positions as dishwashers, kitchen helpers, messengers and the like." (Footnotes deleted.)

In addition, the amendment of the Act in 1966 to define "commerce" in § 6 (29 U.S.C. § 206) as encompassing employees "engaged in the operation" of institutions for the mentally handicapped makes evident the legislative intent to require compensation for resident labor which benefits only institutional needs.

5. Section 3(s)(4) of the Act, 29 U.S.C. § 203(s)(4), states in part:

"(s) 'Enterprise engaged in commerce or in the production of goods for commerce' means an enterprise which has employees engaged in commerce or in the production of goods for commerce, including employees handling, selling, or otherwise working on goods that have been moved in or produced for commerce by any person, and which—
* * * * *

who resided on the premises of the defendants, and that they employed others who handled and worked on goods that have been moved or produced in interstate commerce.[6] Plaintiffs claim that the Fair Labor Standards Act was violated by the defendants. Plaintiffs additionally allege that the defendants failed to compensate them for their employment during the years in question. On the basis of these allegations, I find that plaintiffs have clearly stated a cause of action upon which relief may be granted.

### B. *The Thirteenth Amendment*

■ The scope of the thirteenth amendment to the United States Constitution is manifest. It states:

"Section 1. Neither slavery nor involuntary servitude, except as a punishment for crime whereof the party shall have been duly convicted, shall exist within the United States, or any place subject to their jurisdiction.

"Section 2. Congress shall have power to enforce this article by appropriate legislation."[7]

Although the immediate aim of the thirteenth amendment was the abolition of slavery, it has been construed to encompass or maintain a system of free and voluntary labor throughout the United States. Pollock v. Williams, 322 U.S. 4, 17, 64 S.Ct. 792, 88 L.Ed. 1095 (1944). It has been held that forced labor of certain individuals, including the mentally disabled, amounts to involuntary servitude and therefore is violative of the thirteenth amendment. Stone v. City of Paducah, 120 Ky. 322, 86 S.W. 531 (1905). See Jobson v. Henne, 355 F.2d 129 (2d Cir. 1966). It, however, has never been held that the mere subjecting of the mentally retarded to any form of work program is *per se* unconstitutional under the thirteenth amendment. Plaintiffs who wish to allege a cause of action under the thirteenth amendment must confront two substantial hurdles. First, they must allege (and ultimately prove on the merits) that their labors were performed involuntarily. Plaintiffs in the instant matter, having alleged in their complaint that as a result of their mental conditions they were coerced into performing designated tasks, have satisfied this requirement.

Even upon a showing that labor was performed involuntarily, however, courts have held that such labor is not violative of the thirteenth amendment if it serves a compelling state interest.[8] Thus, it has recently been held that " * * * the Thirteenth Amendment may be violated if a mental institution requires inmates to perform chores which have no therapeutic purpose or are not personally related, but are required to be per-

---

"(4) is engaged in the operation of a hospital, an institution primarily engaged in the care of the sick, the aged, the mentally ill or defective who reside on the premises of such institution * * *."

**6.** The United States Department of Labor has interpreted the 1966 amendments to the Act as follows:

" * * * the 1966 Amendments revised the definition of 'enterprise' to make it clear that activities in connection with the operations of the following are 'for a business purpose' within the meaning of the act:

"(a) hospitals (excluding federal government hospitals),

"(b) institutions primarily engaged in the care of the aged, mentally ill or defective who reside on the premises,

"(d) schools for handicapped or gifted children." Department of Labor, Publication 1282, March 1971, citing 29 U.S.C. §§ 203(r)(1) and (s)(4) (1970).

**7.** Three provisions in the Civil Rights Act are considered to create a private cause of action for specific violations of the thirteenth amendment. Title 42, § 1983, U.S.C., provides for actions which allege deprivations of civil rights under color of state law. Title 42, § 1985(3), U.S.C., allows actions for damages which allege conspiracies to deny equal privileges and immunities. Title 42, § 1986, U.S.C. (1970), provides for damage action for knowing failure to prevent violation of § 1985.

**8.** See Butler v. Perry, 240 U.S. 328, 333, 36 S.Ct. 258, 60 L.Ed. 672 (1916); Jacobson v. Massachusetts, 197 U.S. 11, 25–27, 25 S.Ct. 358, 49 L.Ed. 643 (1905); Heflin v. Sanford, 142 F.2d 798, 799–800 (5th Cir. 1944).

formed solely in order to assist in the defraying of institutional costs * * *." Jobson v. Henne, 355 F.2d 129, 132, n. 3 (2d Cir. 1966).

■ Secondly, therefore, plaintiffs must allege that the work they performed was not therapeutic. Plaintiffs have so alleged in the instant matter. I might add that the burden placed on the state in these matters is something more than merely concluding that all involuntary civil commitments serve the compelling state interest of protecting society from the mentally ill. See Lessard v. Schmidt, 349 F.Supp. 1078 (E.D.Wis. 1972). Likewise, the plaintiffs here will carry a heavy burden in demonstrating that any given task is not therapeutic.

## C. *The Due Process Clauses*

■ Involuntary civil commitments have traditionally been justified on two legal grounds. These grounds are often intermingled and are seldom distinguished from each other. The first is the notion that the state has the right to commit individuals so mentally disoriented that they are incapable of providing for themselves. This notion, labeled as *parens patriae*, allows the state to act in the best interests of the detained individual. The second justification for involuntary civil commitment has been society's need to detain individuals who are adjudged "dangerous" in order to protect itself from potential irrational acts. See generally comment, "Civil Restraint, Mental Illness, and the Right to Treatment," 77 Yale L.J. 87 (1967).

The first justification, *parens patriae*, has been easier to accept because it is essentially paternalistic, and it stems from the theory that the purpose of the commitment is for treatment. Civil commitment statutes are often phrased in lofty terms and stress the treatment aspect of the confinement. In Wisconsin, for example, § 51.005, Wis.Stats. (1971), states that "It is the purpose of this chapter [51] to provide for care and treatment in state and county hospitals for persons who by reason of mental illness, infirmity or deficiency are in need of care and treatment not feasible in their own homes or in private facilities."

Studies of our institutions, however, show that those committed are often not treated.[9] The question which arises in this case is: What substantive due process rights to treatment are accorded to individuals who have been civilly committed? That is a factual question and must be decided on the merits.

For the purposes of this motion to dismiss, I find that the plaintiffs, in alleging that they have been forced to provide nontherapeutic labor for the institution in which they were detained, have in essence alleged that they possess a constitutional right to a level of therapy consistent with the expressed treatment objectives of civil commitment in Wisconsin, and that they have not received their constitutional right to treatment. I find this to be a viable theory upon which relief might be granted on the merits, and I cannot dismiss it for failure to state a claim upon which relief may be granted.[10]

Several courts have suggested that there exists a substantive right to treatment by those civilly committed. In Rouse v. Cameron, 125 U.S.App.D.C. 366, 373 F.2d 451, 453 (1966), Judge Bazelon suggested that " * * *

---

9. See, for example, Joint Commission on Mental Illness and Health, Action for Mental Health: Final Report 3–23 (1961).

10. It is uncontroverted here that there exists sufficient "state action" for jurisdiction under the Civil Rights Act. The Kidulis Nursing Home and the Yorkville Nursing Home are licensed as family care homes pursuant to § 51.18, Wis.Stats. (1971). These homes have had patients placed in them by the state from the state colonies for the mentally retarded and county hospitals. Under the provisions of § 51.18, the state pays these homes for the supervision and maintenance of the placed patients, and the state may visit and investigate such homes and may return the patient to the colony or hospital when deemed advisable.

[i]ndefinite confinement without treatment of one who has been found not criminally responsible may be so inhumane as to be 'cruel and unusual punishment.'" In Wyatt v. Stickney, 325 F. Supp. 781, 784 (M.D.Ala.1971), Judge Johnson stated:

"* * * Adequate and effective treatment is constitutionally required because, absent treatment, the hospital is transformed 'into a penitentiary where one could be held indefinitely for no convicted offense.' Ragsdale v. Overholser, 108 U.S.App.D.C. 308, 281 F.2d 943, 950 (1960). The purpose of involuntary hospitalization for treatment purposes is *treatment* and not mere custodial care or punishment. This is the only justification, from a constitutional standpoint, that allows civil commitments to mental institutions * * *."

The fact that courts have recognized a right to treatment, and the fact that plaintiffs have alleged such a right, signifies that a determination must be made on whether the prevailing conditions in the institution conform with the minimum standards required for treatment in a mental institution. For this reason, defendants' motion to dismiss must be denied.

### III.

In conclusion, therefore, the plaintiffs have stated a cause of action based on several alternative legal theories: the Fair Labor Standards Act, the thirteenth amendment, and the constitutional right to treatment. All of these theories allow plaintiffs to survive defendants' motion to dismiss.[11]

For the reasons stated above,

It is ordered that the defendants' motion to dismiss the complaint or, in the alternative, for summary judgment be and it hereby is denied.

---

11. I am not able at this time to determine whether the defendants stand in *loco parentis* to the plaintiffs. This is a question of fact and must be affirmatively shown by the defendants after properly pleading it in an answer. In deciding this motion to dismiss, I only examine the well pleaded allegations in the plaintiffs' complaint.