

# THE ATTORNEY GENERAL
# OF TEXAS

### AUSTIN, TEXAS 78711

JOHN L. HILL
ATTORNEY GENERAL

January 22, 1975

The Honorable Kenneth D. Gaver, M. D.      Opinion No. H- 502
Commissioner, Texas Department
of. Mental Health and Mental Retardation    Re:    Whether residents and
Box 12668, Capitol Station                          patients at MHMR faci-
Austin, Texas 78711                                 lities are entitled to the
                                                    benefits of state employees
                                                    when they engage in institu-
Dear Dr. Gaver:                                     tion-maintaining labor

You have asked several questions related to the status of patients of
state hospitals and residents of state schools for the mentally retarded
(hereafter collectively referred to as "patient-workers") as employees of
the state for the purpose of receiving the "fringe" benefits of regular state
employment. You state correctly that under the decision of Souder v.
Brennan, 367 F. Supp. 808 (D. C. 1973), patient-workers of non-federal
hospitals, homes and institutions for the mentally retarded and mentally
ill are "employees" covered by the minimum wage and overtime compen-
sation provisions of the Fair Labor Standards Act (FLSA), 29 U. S. C. A.
sections 201-219 and the regulations promulgated thereunder, 29 C. F. R.
section 524 (providing for special minimum wages for certain handicapped
workers). You then ask:

> 1. Will patients of State Hospitals and residents of
> State Schools for the Mentally Retarded, who are
> engaged in institution-maintaining labor, be employees
> of the State of Texas and, as such, subject to the laws,
> rules and regulations and entitled to the rights, privi-
> leges and 'fringe' benefits of regular State employees?

> 2. Will patients of State Hospitals and residents of
> State Schools for the Mentally Retarded, who are engaged
> in work activities of a Sheltered Workshop or Work Acti-
> vities Center that are not institution-maintaining labor,
> be employees of the State of Texas and, as such, subject
> to laws, rules and regulations and entitled to the rights,
> privileges and 'fringe' benefits of regular State employees?

3.   What funds are available for the use of MHMR to
pay wages, overtime pay, and/or 'fringe' benefits
to patient-workers?

Your first question assumes that the patient-workers are engaged in
labor activity covered under the FLSA, ("institution-maintaining" labor)
and thus are "employees" for FLSA purposes of wages and overtime pay,
as decided in Souder.  However, the FLSA does not preempt Texas law
in the area of establishing entitlements to the rights, privileges and
"fringe" benefits of state employment.  The FLSA has been described as
a declaration of policy of the United States as to what constitutes fair
labor standards and determines minimum standards for hours and wages,
[Timberlake v. Day & Zimmerman, Inc., 49 F.Supp. 28, 33 (S. D. Iowa
1943)], designed to accomplish the statutory purpose of eliminating " . . .
labor conditions detrimental to the maintenance of the minimum standard
of living necessary for health, efficiency, and general well-being of
workers . . . "[29 U.S.C.A. § 202 (a)].  While the FLSA deals with
child labor, equal pay, and age discrimination, none of the provisions
of the FLSA address employee "fringe" benefits.  Thus, regarding such
benefits, it cannot be said that the FLSA attempts to supersede the exer-
cise of state law.

Thus, to determine state law in the area of fringe benefits for patient-
workers, we must consider the text of the various state statutory pro-
visions.

Some of the rights, privileges and "fringe" benefits of "state
employment" include:  state workmen's compensation insurance (V. T. C. S.,
art. 8309g); unemployment compensation (V. T. C. S., art. 5221b-1, et
seq.); sick leave, vacations, holidays, emergency leave (V. T. C. S.,
art. 6252-8a); retirement (V. T. C. S., art. 6228a); and federal old age
and survivors insurance (V. T. C. S., art. 695h).

These statutes do not contain a general definition of "state employ-
ment"; each has its own definition of the "employee" or "employments"
entitled to benefits under it.  Thus, instead of a single general definition
of "state employee," our statutes contain a patchwork of "employee"
descriptions, each having specific exclusions and exceptions.  Except for
federal old age and survivors insurance, and unemployment compensation
insurance, none of these statutes expressly exclude patient-workers from
the persons eligible for benefits, and none expressly include any cate-
gory of patient-workers.

A.   Workman's Compensation Insurance for State Employees.

Article 8309g, section 1 defines "employee" as:

> . . . a person in the service of the state
> under an appointment or express contract of
> hire, oral or written, whose compensation is
> paid by warrant issued by the Comptroller,
> except a person employed by the State Highway
> Department or by an institution of higher edu-
> cation subject to a separate workman's com-
> pensation law.

B.   Retirement System for State Employees.

Section 3(c)(1) of article 6228a describes that the "membership" of the Texas Retirement System shall be composed (in part) as follows:

> Any person who becomes an appointive officer
> or employee on or after the effective date of this
> Act shall become a member of the Retirement
> System on the first day of employment as a con-
> dition of employment.   The term appointive of-
> ficer or employee shall mean a person paid a
> monthly or hourly salary from the funds of the
> State and the position occupied by such person
> must be one that subjects that person to the laws,
> rules and regulations of the State as applicable
> to its employees.

C.   Accumulated Vacation or Sick Leave.

Section 1 of article 6252-8a provides yet another definition of employees entitled to the benefits under it:

> 'Employee' as used in this Act means any
> appointed officer or employee in a department of
> the State who is employed on a basis or a position
> normally requiring not less than 900 hours per
> year, but shall not include members of the Legis-
> lature or any incumbent of an office normally

filled by vote of the people; nor persons on piecework basis; nor operators of equipment or drivers of teams whose wages are included in rental rate paid the owners of said equipment or team; nor any person who is covered by the Judicial Retirement System of The State of Texas; nor any person who is covered by the Teacher Retirement System of Texas, except persons employed by the Teacher Retirement System, the Central Education Agency, the Texas Rehabilitation Commission, and classified, administrative, and professional staff members employed by a State institution of higher education who have accumulated vacation or sick leave, or both, during such employment.

D. Federal Old Age and Survivors Insurance for State Employees (OASI)

Section 1 of article 695h defines "Employment" and "State Employee" at subsection (b) and (c) respectively.

(b) The term 'Employment' means any service performed by a State employee except (1) service which in the absence of an agreement entered into under this Act shall constitute 'employment' as defined in the Social Security Act; or (2) service which under the Social Security Act may not be included in an agreement between the State and the Secretary of Health, Education and Welfare entered into under this Act.

(c) The term 'State Employee' in addition to its usual meaning shall include elective and appointive officials of the state; and shall not include those persons rendering services in positions the compensation for which is on a fee basis. The term 'State Employee' shall not include any employees in positions subject to the Teacher

> Retirement System except those employed by
> state departments, state agencies, and state
> institutions as construed in their usual meaning.

The State of Texas is a party to an agreement with the Secretary of
Health, Education and Welfare (HEW) to provide coverage of State
and local employees under the Federal OASI pursuant to 42 U.S.C.
section 418. 42 U.S.C. section 418 provides a list of services which
would be approved for coverage (if requested by the State), but it
excludes patient-workers. 42 U.S.C. section 418(c)(6)(B) provides:

> (6) Such agreement shall exclude -
>
> . . . (B) service performed in a hospital, home
> or other institution by a patient or inmate thereof,
> . . .

It appears that 42 U.S.C. section 418 (c)(6)(B), in conjunction with
article 695h (1)(b)(2), V.T.C.S., excludes Texas patient-workers from
the OASI agreements entered into by Texas with the Secretary of HEW.

### E. Unemployment Compensation Act.

Article 5221b-17(f)(6) defines "employer" in part as:

> (f) 'Employer' means:
>
> . . .
>
> (6) A hospital or an institution of higher
> education (or a group of such organizations)
> located in this State and operated by this
> State or by this State and one (1) or more
> other states or by an instrumentality thereof
> for which services are performed which consti-
> tute employment . . .

However, the same statute contains a provision that excludes the
service performed by patient-workers from its definition of "employment."
Article 5221b-17(g)(5)(U) states:

(5)  The term 'employment' shall not include:

. . .

(U)  Service performed in the employ of a
hospital, if such service is performed by a
patient of such hospital.

Attorney General Opinion H-75 (1973) can be construed as suggesting that the specific exclusion of patient-workers in the above section was overriden by the general election made in article 5221b-22d, which covers all services performed for the state; however, it should be noted that the portion of the opinion which lends itself to that construction is dicta, and special note should be made that the Legislature, evincing a legislative intent not to treat the services that patient-workers render as employment, did exclude them from the employees eligible for unemployment compensation in article 5221b-17(g)(5)(U).

G.   The Texas Mental Health Code.

The Texas Mental Health Code, article 5547-1, et seq., does not address itself to any employment relationship between the State and any of the patients or residents described in this opinion.   Section 2.01A of article 554' 202, V.T.C.S., provides for employees for MHMR:

. . . The number of employees and the salaries
shall be as fixed in the general appropriations Bill.

If the Legislature had intended to provide for patient-workers as "employees it could have done so by way of the general appropriations bill, in conformity with article 5547-202.

This survey of the various fringe benefit statutes shows that the Legislature has not created a general definition of "state employee" or otherwise defined that employment relationship.   The most logical explanation for legislative inaction on the question of patient-worker eligibility for benefits is that the Legislature never considered patient-workers to be State employe and therefore, had no reason to deal with them in that capacity.   The Legislature did consider patient-workers in their capacity as patients but not as employees, in article II, section 3(d) of the Appropriations Act for fiscal

year 1974-1975, (Acts 1973, 63rd Leg., ch. 659, p. 1786 at 1885) which provides a limited gratuity to such persons:

> d.  Patient or Student Assistance.  Subject to the approval and rules and regulations of the governing boards covered by this Section, patients or students in any state hospital or special school under the jurisdiction of the boards, who are assisting in the operation of the institutions as part of their therapy, may receive gratuities out of any funds available to the respective institutions in amounts not to exceed five dollars ($5) per week for each such student or patient participating.  (Emphasis added)

The Texas Legislature used the same language in the Appropriation Acts for fiscal years 1970-71 and 1972-73.  Before 1970-71, the Legislature employed different language to provide for patient or student assistance.  For example, the language of the Appropriation Act for fiscal 1968-69 (Acts 1967, 60th Leg., R.S., ch. 784, p. 2097 at 2137) is:

> Sec. 18.  Patient or Student Employment.  Subject to the approval and rules and regulations of the governing boards, patients or students in any State Hospital or Special School under the jurisdiction of the board, who are assisting in the operation of the institutions, may be paid out of any funds available to the respective institutions an amount not to exceed Two Dollars ($2) per week for each working student or patient.  (Emphasis added)

Thus, before fiscal 1970-71, patient-workers were paid a "compensation" for "Patient or Student employment" instead of a gratuity.  Patient-workers were paid this "compensation" for "Patient or Student employment" instead of a gratuity.  Patient-workers were paid this "compensation" beginning with fiscal 1960-61 (the first time the Legislature appropriated money for patient-workers) and again in fiscal years 1962-63, 1964-65, 1966-67, and 1968-69.  The switch from a compensation to a "gratuity" is evidence that the Legislature intended to treat patient-workers as non-employees by removing all doubt about their non-employee status.

We note that article II, section 3d of the current Appropriations Act limits only the amount of the gratuity a patient-worker can receive.  That section does not, in our opinion, affect the status of patient-workers as "employees" for FLSA purposes of wage and overtime compensation, nor limit their compensation under FLSA standards to $5 per week.

Section 3d is a clear expression of the  legislative intent of treating patient-workers as non-employees and supports the conclusion that although Souder brings them within FLSA for wage and hour purposes, they do not thereby become "employees" for the purpose of statutory fringe benefits of state employment.

Furthermore, to the extent that the fringe benefit statutes are ambiguous we believe they are subject to the rule of statutory construction stated in State v. Arkansas Dock and Channel Co., 365 S.W.2d 220, 224 (Tex. Civ. App., -- San Antonio 1963, err. refd.) that:

> Where an Act of the Legislature is ambiguous, the
> Courts are inclined to follow the administrative
> construction of the Act over a long period of time
> by the officials charged with its administration.

The Department of Mental Health and Mental Retardation has consistently taken the position that no patients of state hospitals or students of state schools are  state  employees for fringe benefits purposes.

In addition, there has been a long standing custom of treating Texas patient-workers as non-employees.  The authority of the State to utilize patient labor has been judicially recognized since Clough v. Worsham, 74 S.W. 350 (Tex. Ct. App. --1903, writ refd).

Thus, given the expression of legislative intent in several appropriations acts and the long standing administrative construction, it is our opinion that patient-workers engaged in institution-maintaining labor are not employees of the State for fringe benefits purposes.

For reasons outlined above in response to your first question, we also answer your second question negatively.  Patient-workers engaged in work activities of a Sheltered Workshop or Work Activities Center that are not institution-maintaining labor are not state employees for fringe benefit purposes even though they may  be considered as  employees for

purposes of the FLSA and the regulations promulgated thereunder. 29 C. F. R. § 525 (Employment of Handicapped Clients in Sheltered Workshops).

The answer to your final question is that the necessary specific appropriations for the payment of wages and overtime pay to FLSA-covered patient-workers are available to MHMR from a number of appropriated items in the current Appropriations Act.

Article 3, section 44 of the Texas Constitution provides in part that:

> The Legislature shall . . . [not] grant, by appropriation or otherwise, any amount of money out of the Treasury of the State, to any individual, on a claim, real or pretended, when the same shall not have been provided for by pre-existing law; nor employ anyone in the name of the State, unless authorized by pre-existing law.

The pre-existing law for payment of minimum wages and overtime pay to FLSA-covered patient-workers is supplied by the FLSA. See Attorney General Opinion M-341 (1969).

Section 6 of article 8 of the Texas Constitution provides that no money shall be drawn from the Treasury but in pursuance of specific appropriations made by law. However, in National Biscuit Co. v. State, 135 S. W. 2d 687, 693 (Tex. Sup. 1940), the Court stated:

> . . . , one of the provisions of Section 6 of Article 8 of our Constitution requires all appropriations of money out of the State Treasury to be specific. It is settled that no particular form of words is required to render an appropriation specific within the meaning of the constitutional provision under discussion. It is sufficient if the Legislature authorizes the expenditure by law, and specifies the purpose for which the appropriation is made . . .

The necessary items of specific appropriation for payment of wages and overtime pay to patient-workers are available in a number of categories of the current Appropriation Act. See, for example, the various items authorizing "unclassified personnel," or "temporary labor."

In addition, the special provisions of article II of the Appropriation Act empower the MHMR Board to allocate funds from a number of very broad categories, including the following: unexpended balances, gifts, donations and federal grants, [Acts 1973, 63rd Leg., ch. 659, at p. 1880, sections 2(c)(d)] and line item 13 for the Central Office, Departments of Mental Health and Mental Retardation, (Acts 1973, 63rd Leg., ch. 659, at p. 1827).

The special provisions of article II also provide for the hiring of hourly workers to be paid out of the appropriations for salaries of classified positions:

> It is further provided that appropriations for salaries of classified positions may be used to pay the wages of hourly workers when the utilization of such personnel is in the best interest of an economical and efficient program. [Acts 1973, 63rd Leg., ch. 659, at p. 1879, section 2(a)(4)].

Thus, depending on administrative considerations and the fiscal condition of MHMR, sufficient flexibility has been provided by the Legislature for the commitment of MHMR funds to meet FLSA minimum wage and overtime pay monetary obligations. Since, we conclude that such patient-workers are not "state employees" for fringe benefit purposes we do not need to discuss the source of funding for any such state benefits.

### S U M M A R Y

> The FLSA does not preempt Texas law in the area of establishing entitlements to the rights, privileges and "fringe" benefits of state employment. Patient-workers of a state hospital or residents of a state school for the

mentally retarded whether performing institution-maintaining labor or engaged in activities of a sheltered workshop or a work activities center are not state "employees," for fringe benefit purposes. The necessary specific appropriations for the payment of wages and overtime pay to patient-workers covered by the FLSA are available to MHMR from a number of appropriated items in the current 1974-1975 Appropriations Act.

Very truly yours,

JOHN L. HILL
Attorney General of Texas

APPROVED:

DAVID M. KENDALL, First Assistant

C. ROBERT HEATH, Chairman
Opinion Committee